T.C. Memo. 1998-98

UNITED STATES TAX COURT

BUYERS HOME WARRANTY COMPANY, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24774-95.                    Filed March 9, 1998.

William L. Feinstein, for petitioner.

Mark A. Weiner, for respondent.

MEMORANDUM OPINION

RAUM, Judge:  The Commissioner determined a $356,179
deficiency in petitioner's 1990 Federal income taxes.  The
Commissioner determined that petitioner's method of accounting
did not accurately reflect petitioner's income.  The notice of
deficiency changed the method of accounting and implemented a

corresponding adjustment under section 481.[1]  At issue is whether the year of change, the first year the new accounting method is applied, is the first open year, 1990, or the year in which the IRS initiated the audit, 1993.  This case was submitted on the basis of a stipulation of facts.

Petitioner is a California corporation with its principal office in Burbank, California.  Petitioner operates under a license granted by the California State Department of Insurance. It sold its first contract on January 12, 1988.

Petitioner sells home warranty contracts to buyers and sellers of previously owned residential property.  Under the terms of the basic home warranty contract, petitioner agrees to repair or replace appliances and covered systems (such as heating systems) that become inoperative during the term of the contract. Customers can buy additional coverage for other appliances and systems not covered by the basic coverage for additional consideration.

The home warranty contracts commence with the close of escrow and are in effect for 1 year, except for mobile home contracts which are in effect for 6 months.  A homeowner can renew the contract upon its expiration, but only if petitioner agrees.  Approximately 10 percent of the contracts are renewed.

---

[1]  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue.

The contracts are noncancellable and nonrefundable, but can be transferred to a subsequent buyer if within the contract period and petitioner is notified. The home warranty contracts do not cover damage from certain events such as fire, flood, storm, neglect or other acts of God. They are intended to insure against inoperation from normal wear and tear.

Petitioner does not directly repair or replace any failed appliance or covered system. Rather, petitioner has contracted with a network of independent contractors and technicians to make the repairs.

Petitioner reported as income 1/12 of the income received for each month a contract was in effect during a taxable year. It also incorporated a half-month convention for the month in which the contract was sold. For example, if a 1-year contract was sold in July of year 1 for $240, $10 would be recognized as income for July and $20 would be recognized for each month from August through December of year 1. Thus, from the $240 received by petitioner in year 1, it would report $110 ($10 + $20 x 5). The remaining $130 would be deferred until year 2. In year 2, petitioner would recognize $20 for each month from January through June and $10 for July. ($20 x 6 + $10 = $130) A similar method was used for the 6-month mobile home contracts.

In addition to the above, petitioner deducted as an "other deduction," an amount of 20 percent of the premiums it

recognized. (Except for 1988, when it deducted 20 percent of the entire amount of contracts written in 1988.) It described this deduction as "provisions for reserves." Thus, continuing the example used above, when it recognized $110 in year 1, petitioner would take a deduction of $22 in year 1 ($110 x .2) and called this deduction a "provision for reserve." In year 2, petitioner would recognize as income the "provision for reserve" deduction from the prior year. Thus, in year 1, petitioner effectively reported $88 ($110 - $22). In year 2, petitioner reported $152 ($130 + $22).

Respondent commenced an examination of petitioner's 1990 and 1991 returns in March 1993. (Later during the examination 1992 was included.) Prior to the commencement of the examination, petitioner made no application to respondent with respect to changing its method of accounting for its income and deductions. During respondent's examination of petitioner, the issue arose as to whether the home warranty contracts constitute insurance contracts for purposes of section 832. To resolve that issue, the parties participated in obtaining technical advice from respondent's national office. This process of obtaining technical advice was initiated by respondent's revenue agent by means of a memorandum (Form 4463, Request for Technical Advice From Associate Chief Counsels (Technical) and (International)) dated June 17, 1993. Petitioner participated in the technical

advice process and advocated that the contracts it sold were insurance contracts. Respondent's revenue agent took the position that the contracts were something other than insurance contracts. On December 10, 1993, respondent issued a Technical Advice Memorandum concluding that the home warranty contracts are insurance contracts for purposes of section 832. At no time during the examination did petitioner submit a Form 3115, requesting a change in method of accounting, although in 1994 petitioner requested of respondent's Appeals Office that petitioner be treated as if it had requested a change in method of accounting.[2]

The parties have since stipulated that the home warranty contracts described above are insurance contracts; petitioner is an "insurance company other than a life insurance company" as described in section 831; and the revenue generated from the insurance contracts is "gross income" as defined in section 832(b)(1) and (3). Petitioner reported its income and deductions from the sale of its insurance contracts using what it believed to be a GAAP (Generally Accepted Accounting Principles) method of accounting. The method of accounting used by petitioner for

_____

[2] In its briefs, petitioner consistently maintains that the year of change should be 1993. Petitioner argues that in 1993 it requested of the Appeals Office that it be treated as if it had requested a change in accounting method. However, the stipulation of facts states that petitioner made the request of the Appeals Office in 1994. Since petitioner uses 1993 in its brief, we use that year henceforth in this opinion.

taxable years 1988 through 1992 was not in accordance with section 832(b)(4).

The notice of deficiency made various adjustments to petitioner's income and "provision for reserves" deductions so as to put petitioner on the method of accounting prescribed by section 832(b)(4). The notice of deficiency made these changes by determining a deficiency in the first open year, 1990. The notice of deficiency does not take into account any net operating losses which may have been generated by the 1993 taxable year. The only remaining issue for consideration is which year, 1990 or 1993, is the year of change.[3]

Section 446(a) requires a taxpayer to compute his taxable income using the method of accounting he uses to calculate his income in keeping his books. Section 446(b) provides that "if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary, does clearly reflect income." When the taxpayer's accounting method is changed, section 481(a) requires that adjustments be made to the taxpayer's income "to prevent amounts from being duplicated or omitted".

---

[3] The stipulation of facts states that petitioner does not agree that respondent properly applied sec. 481(b). Petitioner does not argue that point on brief. Therefore, we treat petitioner as having conceded the issue.

The adjustments made to implement the new accounting method are applied in the "year of change", defined by section 1.481-1(a)(1), Income Tax Regs, as "the taxable year for which the taxable income of the taxpayer is computed under a method of accounting different from that used for the preceding taxable year."  Neither section 481 nor the accompanying regulations explain how the year of change is chosen.  When the taxpayer requests a change in accounting method, the IRS uses Rev. Proc. 92-20, 1992-1 C.B. 685, to determine the year of change.  When the taxpayer makes no request, the changes required by examination are applied by default to the earliest open year for which the limitations period has not expired.

Here, the year of change is the earliest open year. Petitioner has stipulated that before the examination began, petitioner made no application to the IRS with respect to changing its method of accounting.  At no time during the examination did petitioner submit a Form 3115, formally requesting to change its accounting method.  Since petitioner did not initiate a change in its accounting method, Rev. Proc. 92-20, supra, does not apply.  The IRS was free to apply the accounting method changes to the earliest open year under examination. Consequently, the year of change is 1990.

Petitioner's sole contention is that the year of change should be 1993 instead of 1990.  Petitioner makes two main

arguments.  First, petitioner asserts that it was not "required" to change its accounting method pursuant to section 1.481-1(c)(5), Income Tax Regs.  Second, petitioner alleges that Rev. Proc. 92-20, 1992-1 C.B. 685, violates equal protection.

Section 1.481-1(c)(5), Income Tax Regs., provides that "A change in the taxpayer's method of accounting <u>required</u> as a result of an examination of the taxpayer's income tax return will not be considered as initiated by the taxpayer."  (Emphasis supplied.)  Both the regulations and Rev. Proc. 92-20, <u>supra</u>, differentiate between accounting method changes initiated by the taxpayer and those initiated by the Commissioner.  The year of change is more favorable if the change is initiated by the taxpayer.

Petitioner asserts the following:  During the audit, the IRS suggested petitioner be treated as a warranty company.  In response, petitioner proposed, as a compromise, that it be treated as an insurance company.  According to petitioner, that compromise was accepted by respondent via the technical advice memorandum.  Because it was a "compromise", petitioner argues that "there was no <u>requirement</u> that petitioner change accounting methods."  Petitioner's Opening Brief, p. 9.

Despite the spin petitioner attempts to place on events, nothing in the record indicates that petitioner initiated any of the events relating to its change of accounting method.  The

stipulation of facts states that petitioner advocated that it was an insurance company.  There is nothing to support its contention that it "proposed a compromise".  After the examination ended, the Commissioner issued a notice of deficiency.  In its Explanation of Adjustments, the notice of deficiency states: "it is required that the taxpayer change the accounting methods previously employed to methods permitted or required under the provisions of the Code."  (Emphasis supplied.)  Petitioner was required to submit to the audit, and it was required by the notice of deficiency to change its accounting method.  Petitioner's situation falls squarely within the second sentence of section 1.481-1(c)(5), Income Tax Regs.  Petitioner's accounting method change was "required as a result of an examination of the taxpayer's income tax return".

Petitioner also contends that Rev. Proc. 92-20, supra, violates equal protection.  The revenue procedure provides that the year of change depends on whether and when a taxpayer requests a change of accounting method.  Petitioner argues that equal protection has been violated in its case because there were no cases or other rulings that indicated that petitioner's original method of accounting was erroneous.  Petitioner attempts to bolster its argument by pointing out that the IRS agent who proposed that the warranty method be used was overruled by the national office.  According to petitioner, the fact that the

national office did not concur with the field agent means petitioner had no reason to presume its method was incorrect.

Petitioner's argument is fundamentally flawed. First, even if one method advocated by the IRS was not adopted, it does not follow that petitioner's existing method was correct. Section 1.446-1(a)(2), Income Tax Regs., acknowledges that the same method of accounting cannot be used by all taxpayers. It is required that the method chosen clearly reflect income. In petitioner's case, it agreed that it was an insurance company. Thus, it is required by statute to use the method of accounting prescribed by section 832.

Second, petitioner injects a subjective element into the Code that does not exist. There is nothing in the statute or regulations concerning what to do if the taxpayer thought, incorrectly, that the method used clearly reflected income. The IRS is concerned with collecting the correct amount of revenue. Nowhere in the applicable provisions of the Code does the taxpayer get credit if it thought it correctly calculated income. If the taxpayer acts in good faith, but is incorrect, it owes the deficiency. If it is willfully or negligently incorrect, it may also owe penalties and additions to tax. Petitioner here owes only the deficiency.

The purpose of Rev. Proc. 92-20, 1992-1 C.B. 685, is to "encourage prompt voluntary compliance" and correct the

deficiency of Rev. Proc. 84-74, 1984-2 C.B. 736. That revenue procedure had been used by a number of taxpayers to request a change in a later year and on better terms than those contained in the statute. In other words, a taxpayer, even if aware that its accounting method did not clearly reflect income, could apply for a method change, and, in doing so, receive better terms than if the IRS had mandated the change. Rev. Proc. 92-20, 1992-1 C.B. at 688.

Petitioner has stipulated that it should be following the method of accounting described in section 832. Petitioner further stipulated that its method of accounting was not in accordance with section 832(b)(4). As a result, its method did not clearly reflect income. However, if petitioner is allowed to use 1993 as the year of change, it will be allowed to knowingly use an incorrect method for 3 years. This is the situation Rev. Proc. 92-20, supra, was implemented to prevent.

Petitioner alludes to various sections of the revenue procedure to bolster its claim that its year of change should be 1993. These sections do not apply to petitioner for the simple reason that petitioner was under examination.

The Commissioner is given broad authority to determine whether a taxpayer's accounting method clearly reflects income. That determination "is not to be set aside unless it is shown to be plainly arbitrary or an abuse of discretion." Gustafson v.

<u>Commissioner</u>, T.C. Memo. 1988-82.  Petitioner has failed to demonstrate an abuse of discretion.

<u>Decision will be entered</u>

<u>for respondent</u>.