T.C. Memo. 2001-150


UNITED STATES TAX COURT


BROOKSHIRE BROTHERS HOLDING, INC. AND SUBSIDIARIES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 4522-99.                           Filed June 22, 2001.


        In the early 1990's, P constructed, placed into
service, and began depreciating gas station properties.
P, an accrual method taxpayer, calculated its
depreciation deductions for tax purposes using the
modified accelerated cost recovery system (MACRS) of
sec. 168, I.R.C.  On its returns for the years ended in
1993, 1994, and 1995, P classified and depreciated the
gas stations as nonresidential real property, with a
31.5- or 39-year recovery period. Subsequently, P filed
amended returns for those years reclassifying the gas
stations as 15-year property, based upon an Industry
Specialization Program Coordinated Issue Paper issued
by the Internal Revenue Service.  R then remitted
refunds.  P thereafter filed original returns for the
years ended in 1996 and 1997 which depreciated the gas
stations as 15-year property.  R challenged this
treatment as an unauthorized change in accounting
method.

        <u>Held</u>:  In filing returns for the years ended in
1996 and 1997 which depreciated the gas stations as 15-

year property, P did not violate the rules set forth in sec. 446(e), I.R.C., regarding changes in method of accounting.

William H. Lester, Jr., Matthew S. Parkin, and Joshua A. Sutin, for petitioner.

David B. Mora and W. Lance Stodghill, for respondent.

MEMORANDUM OPINION

NIMS, Judge: Respondent determined Federal income tax deficiencies for petitioner's tax years ended April 1996 and April 1997, in the amounts of $54,645 and $71,260, respectively. After concessions, the sole issue for decision is whether deductions taken by petitioner, for depreciation of gas station properties, represent a change in accounting method made without securing the "consent of the Secretary" as required under section 446(e). (Section 1.446-1(e)(2)(i), Income Tax Regs., substitutes "consent of the Commissioner" for consent of the Secretary, which practical substitution we henceforth adopt.) Additional adjustments made in the statutory notice of deficiency are computational in nature and will be resolved by our holding on the foregoing issue.

Unless otherwise indicated, all section references are to sections of the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

This case was submitted fully stipulated in accordance with Rule 122, and the facts are so found. The stipulations of the parties, with accompanying exhibits, are incorporated herein by this reference.

### Petitioner's Operations

Brookshire Brothers Holding, Inc., is, and was at the time of filing the petition in this case, a Nevada corporation which maintained its principal offices in Lake Charles, Louisiana. Brookshire Brothers Holding, Inc., and its subsidiaries (hereinafter collectively petitioner) are an affiliated group of corporations which for all relevant tax years filed a consolidated Federal income tax return.

As a significant component of its activities, petitioner is engaged in the business of operating a chain of grocery stores. In September of 1991, petitioner began constructing gas station properties accessible through the parking lots of certain of its grocery stores. These gas stations were subsequently placed into service at grocery store locations throughout the State of Texas.

### Petitioner's Accounting

Petitioner employs the accrual method of accounting and uses a taxable year ending on the last Saturday of April. Within this overall method of accounting, petitioner generally computes

depreciation for tangible assets placed in service after 1986 under the modified accelerated cost recovery system (MACRS), in accordance with section 168.

On its U.S. Corporation Income Tax Return, Form 1120, for the year ended April 24, 1993, petitioner began depreciating the gas station properties.[1]  In doing so, petitioner characterized the gas stations as nonresidential real property.  Petitioner likewise classified the gas stations as nonresidential real property on its returns for the taxable years ending in April of 1994 and April of 1995.  On the basis of such classification and the prescribed treatment for nonresidential real property under the MACRS rules, petitioner's returns for the years ended in 1993, 1994, and 1995 reflected depreciation of the gas stations using the straight line method and a recovery period of 31.5 or 39 years.  (The Omnibus Budget Reconciliation Act of 1993, Pub. L. 103-66, sec. 13151, 107 Stat. 448, extended the recovery period for nonresidential real property from 31.5 to 39 years, generally effective for property placed into service after May 12, 1993.)

---

[1]  Although the parties stipulated that petitioner began depreciating the gas stations in the year ending in 1992, this appears to be erroneous because petitioner's return for the fiscal year ending April 25, 1992, does not reflect any such deductions on the depreciation schedule.  We therefore rely on the Form 1120 for that fiscal year.  See Jasionowski v. Commissioner, 66 T.C. 312, 316-318 (1976).

Then, on July 15, 1996, petitioner filed with the Internal Revenue Service an Amended U.S. Corporation Income Tax Return, Form 1120X, for each of the tax years ended in 1993 through 1995. On these amended returns, petitioner reclassified the gas stations as 15-year property under the MACRS rules and, consistent therewith, recalculated depreciation utilizing the 150 percent declining balance method and a 15-year recovery period. Petitioner also included the following explanation with each Form 1120X: "THE DETERMINATION WAS MADE THAT GAS STATION CONVENIENCE STORES SHOULD BE RECLASSED FROM 31.5 AND 39 YEAR PROPERTY TO 15 YEAR PROPERTY BASED ON THE ATTACHED MEMO." The memo so referenced and attached was a copy of an Industry Specialization Program Coordinated Issue Paper for Petroleum and Retail Industries (ISP paper).

The ISP paper, issued by the Internal Revenue Service with a stated effective date of March 1, 1995, set forth the test under which a convenience store would qualify as 15-year property, rather than nonresidential real property, for MACRS depreciation purposes. In general, the ISP paper required that the store be used primarily to market petroleum products. At some time thereafter, the Internal Revenue Service issued to petitioner refunds of the full amount claimed in the amended returns for years ended in 1993 and 1994 and a partial refund of the amount claimed for the year ended in 1995.

After filing the amended returns for prior years, petitioner filed original Forms 1120 for the years ended in April of 1996 and April of 1997.  On these returns, the gas stations were classified and depreciated as 15-year property.  Petitioner at no time filed a Form 3115, Application for Change in Method of Accounting, with respect to the gas station properties.

Respondent subsequently examined petitioner's returns for the tax years ended in 1996 and 1997 and issued a notice of deficiency with respect to those years on December 8, 1998.  Therein, respondent determined, among other things, that petitioner's deductions for depreciation must be decreased because petitioner, in treating the gas stations as 15-year property, had engaged in a change of accounting method without the consent of the Commissioner.  Respondent computed the amount of such decreases in depreciation expense as being $302,101 and $257,833 for the years ended in 1996 and 1997, respectively.  The corresponding increases in taxable income resulted in deficiencies that are the subject of this litigation.

## Discussion

### I.  General Rules

#### A.  Accounting Methods

As a threshold premise, section 446(a) sets forth the general rule that "Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly

computes his income in keeping his books."  Section 446(e) then provides the particular standard governing changes in accounting method and reads as follows:

> SEC. 446(e).  Requirement Respecting Change of Accounting Method.--Except as otherwise expressly provided in this chapter, a taxpayer who changes the method of accounting on the basis of which he regularly computes his income in keeping his books shall, before computing his taxable income under the new method, secure the consent of the Secretary.

In addition, regulations promulgated under section 446 further clarify the operation of these statutory mandates:

> Requirement respecting the adoption or change of accounting method.  (1) A taxpayer filing his first return may adopt any permissible method of accounting in computing taxable income for the taxable year covered by such return. * * *
>
> (2)(i) Except as otherwise expressly provided in chapter 1 of the Code and the regulations thereunder, a taxpayer who changes the method of accounting employed in keeping his books shall, before computing his income upon such new method for purposes of taxation, secure the consent of the Commissioner.  Consent must be secured whether or not such method is proper or is permitted under the Internal Revenue Code or the regulations thereunder.  [Sec. 1.446-1(e)(1) and (2)(i), Income Tax Regs.]

For purposes of the foregoing rules, a change in accounting method "includes a change in the overall plan of accounting for gross income or deductions or a change in the treatment of any material item used in such overall plan."  Sec. 1.446-1(e)(2)(ii)(a), Income Tax Regs.  A material item, in turn, "is any item which involves the proper time for the inclusion of the item in income or the taking of a deduction."  Id.

However, notwithstanding the breadth of these definitions, the regulations also offer the following caveat:  "Although a method of accounting may exist under this definition without the necessity of a pattern of consistent treatment of an item, in most instances a method of accounting is not established for an item without such consistent treatment."  Id.  Moreover, the regulatory text details certain types of adjustments, with examples thereof, that are specifically excluded from characterization as changes in accounting method:

> A change in method of accounting does not include correction of mathematical or posting errors, or errors in the computation of tax liability (such as errors in computation of the foreign tax credit, net operating loss, percentage depletion or investment credit). Also, a change in method of accounting does not include adjustment of any item of income or deduction which does not involve the proper time for the inclusion of the item of income or the taking of a deduction.  For example, corrections of items that are deducted as interest or salary, but which are in fact payments of dividends, and of items that are deducted as business expenses, but which are in fact personal expenses, are not changes in method of accounting.  In addition, a change in the method of accounting does not include an adjustment with respect to the addition to a reserve for bad debts or an adjustment in the useful life of a depreciable asset.  Although such adjustments may involve the question of the proper time for the taking of a deduction, such items are traditionally corrected by adjustments in the current and future years. * * * A change in the method of accounting also does not include a change in treatment resulting from a change in underlying facts.  On the other hand, for example, a correction to require depreciation in lieu of a deduction for the cost of a class of depreciable assets which had been consistently treated as an expense in the year of purchase involves the question of the

proper timing of an item, and is to be treated as a change in method of accounting. [Sec. 1.446-1(e)(2)(ii)(b), Income Tax Regs.]

Once a change in method of accounting is identified, the procedures for securing the Commissioner's consent are contained in section 1.446-1(e)(3), Income Tax Regs. To secure such consent, the taxpayer must "file an application on Form 3115 with the Commissioner" or, alternatively, must comply with any administrative procedures the Commissioner might prescribe for permitting certain types of changes in accounting method. Id.

B. Depreciation Deductions

Depreciation deductions are primarily governed by sections 167 and 168. In relevant part, section 167 provides:

SEC. 167. DEPRECIATION.

(a) General Rule.--There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)--

(1) of property used in the trade or business, or

(2) of property held for the production of income.

(b) Cross Reference.--

For determination of depreciation deduction in case of property to which section 168 applies, see section 168.

Section 168, in turn, describes a specific depreciation system for tangible property. Section 168 was added to the Internal Revenue Code by the Economic Recovery Tax Act of 1981,

Pub. L. 97-34, 95 Stat. 172, which enacted the accelerated cost recovery system (ACRS). Then, as part of the Tax Reform Act of 1986, Pub. L. 99-514, secs. 201, 203, 100 Stat. 2122-2123, 2143, Congress replaced ACRS with a modified accelerated cost recovery system (MACRS), effective generally for property placed in service after December 31, 1986, and section 168 was amended accordingly.

Under MACRS, assets are placed into 1 of 10 classes. See sec. 168(c), (e). Classifications are assigned either according to class life or, for certain types of property, by the nature of the asset. See id. The classification of an item under MACRS determines two critical elements in calculating the allowable depreciation: (1) The applicable depreciation method (200 percent declining balance, later switching to straight line; 150 percent declining balance, later switching to straight line; or straight line), and (2) the applicable recovery period (the period over which depreciation deductions are taken). See sec. 168(a), (b), and (c). As pertinent here, two of the available MACRS classifications are 15-year property and nonresidential real property, which differ both in the required depreciation method and in the mandated recovery period. See id.

II. Contentions of the Parties

The parties in this matter do not dispute, and have stipulated, that petitioner's gas stations are assets of a nature

which may properly be classified as 15-year property under the MACRS rules.  Rather, their disagreement lies in whether petitioner's treatment of the properties as such on tax returns filed for the years at issue constitutes an unauthorized change in method of accounting.

Petitioner's primary contention is that depreciating the gas stations as 15-year property does not reflect a change in accounting method within the meaning of section 446(e). According to petitioner, reclassification of the gas stations as 15-year property is excepted from characterization as a change in accounting method because the new treatment does not involve a material item, is analogous to a change in useful life, is a mere correction, and does not deviate from an established consistent method of treatment.

In the alternative, even if depreciating the gas stations as 15-year property is deemed a change in accounting method, petitioner maintains that consent for such change was received from respondent.  Petitioner alleges that respondent's acceptance of petitioner's amended returns for prior years and issuance of refunds constitutes a sufficient consent for the reclassification.

Conversely, respondent asserts that petitioner changed its method of accounting for the gas station properties, without respondent's consent, in two respects.  In respondent's

estimation, petitioner's reclassification involved changing (1) the recovery period over which depreciation deductions were to be claimed from 31.5 or 39 years to 15 years and (2) the method by which depreciation was to be calculated from straight line to declining balance.  Respondent further avers that these alterations are not immaterial in that they implicate the timing of deductions, are not equivalent to a change in useful life, are not akin to the mere correction of a posting error, and do diverge from a consistently established method.

It is also respondent's position that the above change was made without securing respondent's consent.  Respondent relies on the fact that petitioner neither filed a Form 3115 nor followed any other prescribed administrative procedures for effecting such a change.

III. Application

The initial question raised by this matter is whether petitioner's treatment of the gas stations as 15-year property constitutes a change in accounting method within the meaning of section 446(e) and related regulations.  If such inquiry is answered in the affirmative, a second question regarding whether petitioner obtained consent for the change will be presented.

As previously indicated, a change in accounting method for purposes of section 446(e) is generally defined to encompass a change in the overall plan of accounting for income or deductions

as well as a change in the treatment of any material item.  See sec. 1.446-1(e)(2)(ii)(a), Income Tax Regs.  A material item, in turn, is explained by regulations as "any item which involves the proper time for the inclusion of the item in income or the taking of a deduction."  Id.  This Court has also expounded that "When an accounting practice merely postpones the reporting of income, rather than permanently avoiding the reporting of income over the taxpayer's lifetime, it involves the proper time for reporting income."  Wayne Bolt & Nut Co. v. Commissioner, 93 T.C. 500, 510 (1989).

In the case at bar, petitioner altered neither its overall plan of accounting for income and deductions on an accrual basis nor its basic system of accounting for depreciation using MACRS. Petitioner is, however, seeking to switch from deducting the cost of its gas station properties over a 31.5- or 39-year period on a straight line basis to writing off these costs over a 15-year term on a declining balance basis.  Such involves the timing of deductions, not the total amount of lifetime income, and would thus appear at first blush to be a "material" difference signaling a change in accounting method.

Yet regulations specifically provide that "a change in the method of accounting does not include * * * an adjustment in the useful life of a depreciable asset", notwithstanding the fact that "such adjustments may involve the question of the proper

time for the taking of a deduction". Sec. 1.446-1(e)(2)(ii)(b), Income Tax Regs. Therefore, regardless of whether a change might otherwise be deemed an unauthorized material alteration, the change will not run afoul of section 446(e) if it falls within this useful life exception.

Petitioner asks us to find that its revision of the recovery period used in depreciating its gas stations is the equivalent of an adjustment in useful life. Respondent, in contrast, argues that the concept of useful life as employed under prior law cannot be equated with the designation of a recovery period under the current accelerated system.

Prior to the 1981 enactment of ACRS, depreciation deductions were based on estimated useful life, meaning the period over which an asset could reasonably be expected to be useful to the taxpayer in his or her business or income-producing activities. See Liddle v. Commissioner, 103 T.C. 285, 290 (1994), affd. 65 F.3d 329 (3d Cir. 1995). Then, with implementation of the accelerated system, Congress mandated that depreciation deductions be taken over one of a limited number of arbitrary statutory periods. See id. at 291. Yet to the extent that selection of a useful life under prior law or a recovery period under current law determines the span of years over which

property will be depreciated, there would appear to be no meaningful difference for purposes of the exception in section 1.446-1(e)(2)(ii)(b), Income Tax Regs.

However, the foregoing analogy is complicated by the fact that, as presently codified in section 168, MACRS inextricably links recovery period and depreciation method. A reclassification thus can affect not only the time over which deductions are taken but also the methodology by which those deductions are calculated. Such linkage generally did not exist under earlier statutes[2], and previous case law indicates that a change in depreciation method was not excluded from the consent requirement. See Standard Oil Co. (Indiana) v. Commissioner, 77 T.C. 349, 410-411 (1981); Casey v. Commissioner, 38 T.C. 357, 384-387 (1962).

Hence, we are faced with a choice. On one hand, to adopt petitioner's approach and rule that a reclassification of property under MACRS should be treated as synonymous with an adjustment in useful life for purposes of the regulatory exception would broaden the exception to cover changes not only in the period for depreciation but also potentially in the method

---

[2]    There were some exceptions, see, e.g., former sec. 167(c) (accelerated depreciation is available only for property with a useful life of 3 years of more); former sec. 167(j)(5) (sec. 1250 property that is used residential real property qualifies for a 125 percent declining balance method if the property has a useful life of 20 years or more).

for calculating depreciation. On the other hand, to accept respondent's position and summarily decline to equate the changes would significantly curtail the exception's usefulness under the current section 168 regime.

We conclude that the former option is most consistent with the regulatory scheme. The similarities between a change in MACRS classification and a change in useful life are greater than the differences. Section 1.446-1(e)(2)(ii)(b), Income Tax Regs., was clearly intended to permit taxpayers to alter their depreciation schedules. The type of adjustment explicitly permitted--a change in useful life--would have resulted both in depreciation deductions over a longer or shorter period than originally contemplated and in an increased or decreased amount being deducted in any given period. A change in MACRS classification will have precisely these same two effects. Although a portion of the change in amount may be attributable to calculation method, as opposed to period length alone, such carries insufficient weight when balanced against severely limiting the intended relief.

We therefore hold that the filing of returns for the years ended in 1996 and 1997 which depreciated the gas stations as 15-year property did not result in an unauthorized change in petitioner's method of accounting. Petitioner's change in MACRS classification is excluded from the definition of a change in

accounting method by reason of analogy to the useful life exception contained in section 1.446-1(e)(2)(ii)(b), Income Tax Regs.  Accordingly, we need not reach the parties' other contentions regarding the existence of a mere correction, a consistently adopted method, or consent from the Commissioner.

As a final note, we observe that neither party has cited section 168(e)(3)(E)(iii), enacted as part of the Small Business Job Protection Act of 1996, Pub. L. 104-188, sec. 1120(a), 110 Stat. 1765.  Nor have they asked us to address the application of Rev. Proc. 97-10, 1997-1 C.B. 628, promulgated under such statute, to situations similar to that presently before the Court.  We thus express no opinion as to the reach of the useful life exception in the section 168(e)(3)(E)(iii) context or in other circumstances where Congress or the Commissioner has explicitly set forth procedures relating to particular depreciation adjustments.

To reflect the foregoing and to give effect to concessions,

Decision will be entered under Rule 155.