**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 01-60978
_____

COMMISSIONER OF INTERNAL REVENUE,

Petitioner-Appellant,

versus

BROOKSHIRE BROTHERS HOLDING, INC. and
SUBSIDIARIES,

Respondent-Appellee.

_____

Appeal from a Decision
of the United States Tax Court
_____

January 29, 2003

Before JOLLY, DUHÉ, and WIENER, Circuit Judges.

Wiener, Circuit Judge:

Petitioner-Appellant Commissioner of Internal Revenue ("Commissioner" or "government") appeals an adverse judgment of the United States Tax Court ("Tax Court") which held that, for income tax years 1996 and 1997, Respondent-Appellee Brookshire Brothers Holding, Inc. and Subsidiaries (collectively, "Brookshire" or "taxpayer") did not make an unauthorized change in its "method of accounting" in violation of § 446(e) of the Internal Revenue Code ("IRC"). We affirm.

## I. Facts and Proceedings

The Tax Court decided this case on stipulated facts. Historically, Brookshire has operated grocery stores or supermarkets, primarily in the State of Texas. The parent and subsidiary corporations constitute an affiliated group that employs the accrual method of accounting and files a consolidated federal income tax return for tax years that end on the last Saturday in April. Pursuant to IRC § 168, Brookshire has always used the modified accelerated cost recovery system ("MACRS") for purposes of depreciating the tangible assets here at issue.

Beginning in 1991, Brookshire undertook construction of gas station properties at grocery store locations in Texas. In the initial years, Brookshire's corporate tax returns identified the gas stations as non-residential real property which, under the MACRS rules, reported depreciation on a straight-line method for periods of 31.5 or 39 years for its 1993-95 tax years. Brookshire subsequently filed amended returns for those three tax years, reclassifying the gas stations as 15-year property — still under the MACRS's rules, however — recalculating depreciation on the 150% declining balance method over a recovery period of 15 years. The amended returns contain the following statement:

> THE DETERMINATION WAS MADE THAT GAS STATION CONVENIENCE STORES SHOULD BE RECLASSED FROM 31.5 AND 39 YEAR PROPERTY TO 15 YEAR PROPERTY BASED ON THE ATTACHED MEMO.

The attached memo was an ISP entitled "Industry Specialization

2

Program Coordinated Issue Paper for Petroleum and Retail Industries," which had been issued by the Internal Revenue Service ("IRS") effective March 1, 1995. The IRS accepted those amended returns and issued refunds to Brookshire in the full amounts claimed for tax years ending in 1993 and 1994, and in a partial amount for the tax year ending in 1995.

Thereafter, Brookshire timely filed corporate tax returns for the tax years here at issue, those ending in April, 1996 and 1997, continuing to classify and depreciate the gas station properties in the same manner that had been employed in the amended returns for 1993-95. Brookshire never filed an Application for Change in Method of Accounting (Form 3115) for the gas station properties: not in connection with the initial returns for 1993-95; not in connection with the amended returns for those years; and not in connection with the returns for 1996 and 1997. The Commissioner issued a deficiency notice following IRS examinations of Brookshire's returns for tax years ending in April, 1996 and 1997, asserting, inter alia, that Brookshire's depreciation deductions for those years had to be decreased because Brookshire had changed its accounting method without obtaining prior consent from the Commissioner pursuant to IRC § 446(e).

IRC § 446(e) requires that "a taxpayer who changes the method of accounting on the basis of which he regularly computes his income in keeping his books shall, before computing his taxable

income under the new method, secure the consent of the Secretary."[1] Treasury Reg. § 1.446-1(e)(2)(i) specifies that "a taxpayer who changes the method of accounting employed in keeping his books" shall obtain the consent of the Secretary "before computing his income upon such new method for purposes of taxation" regardless of "whether or not such method is proper or is permitted under the Internal Revenue Code or the regulations thereunder."[2] The Commissioner does not contend that the method used by Brookshire for 1996 and 1997 is either improper or not permitted.

Treasury Reg. § 1.446-1(e)(3)(i) instructs that "to secure the Commissioner's consent...the taxpayer must file an application on Form 3115 with the Commissioner <u>during the taxable year in which the taxpayer desires to make the change in method of accounting</u>" (emphasis added).[3] If that which Brookshire did regarding gas station depreciation constituted a "change in method of accounting," the year in which Brookshire "desire[d] to make the change" was its tax year ending in April, 1993, the one for which Brookshire first employed the declining balance/15-year term; for the preceding years in which the gas station properties were in service and depreciated for tax purposes, Brookshire reported depreciation on a straight line/31.5 or 39 year basis. But, as

---

[1] 26 U.S.C. § 446(e) (2000).

[2] Treas. Reg. § 1.446-1(e)(2)(i) (as amended in 2001).

[3] Treas. Reg. § 1.446-1(e)(3)(i) (as amended in 2001).

4

counsel for the Commissioner confirmed at oral argument, 1993 and the other years covered by the amended returns are closed, explaining why the IRS challenged Brookshire's corporate income tax returns only for tax years ending in 1996 and 1997 —— the earliest ones remaining open —— despite the fact that neither 1996 nor 1997 was "the" year for which Brookshire desired to make, and did make, the alleged change.  Obviously, there can be only one such tax year, and here it was the one ending in April, 1993.

Brookshire filed a petition in the Tax Court seeking redetermination of the deficiencies asserted against it for the years ending 1996 and 1997.  After Brookshire and the Commissioner consented to have the case decided on stipulated facts, the Tax Court ruled in Brookshire's favor.  The Commissioner timely filed a notice of appeal.

## II. Analysis

### A.    Standard of Review

In general, we review appeals from the Tax Court as we do those from district courts:  Determinations of fact are reviewed for clear error; rulings of law are reviewed de novo.[4]  As this case was tried on stipulated facts, the only issues before us are conclusions of law, so our review of this case is entirely plenary.

### B.    Agreement with the Reasoning of the Tax Court

After quoting IRC § 446(e) and the pertinent portions of the

---

[4] Estate of Jameson v. Commissioner, 267 F.3d 366, 370 (5th Cir. 2001).

applicable Treasury Regulations, the Tax Court noted that a change in accounting method "includes a change in the overall plan of accounting for gross income or deductions or a change in the treatment of any material item used in such overall plan."[5] The Tax Court also noted that a "material" item "is any item which involves the proper time for the inclusion of the item in income or the taking of a deduction."[6] Without deciding whether Brookshire's shift from non-residential real property to 15-year property for purposes of depreciation of the gas station properties constituted a change in accounting method for purposes of IRC § 446, the Tax Court observed that express exclusions are set forth in the regulations for specific types of adjustments that are not to be characterized as changes in accounting method. The court cited two relevant statements from Treas. Reg. 1.446-1(e)(2)(ii)(b):

> [A] change in method of accounting does not include adjustment of any item of income or deduction which does not involve the proper time for the inclusion of the item of income or the taking of a deduction.
>
> ...
>
> In addition, a change in the method of accounting does not include...an adjustment in the useful life of a depreciable asset.[7]

---

[5] Treas. Reg. 1.446-1(e)(2)(ii)(a)(as amended in 2001)(emphasis added). For the Tax Court's reasoning, see Brookshire Bros. Holding, Inc. v. Commissioner, 81 T.C.M. (CCH) 1799, 1802-04 (2001).

[6] Id. (emphasis added).

[7] Treas. Reg. § 1.446-1(e)(2)(ii)(b) (as amended in 2001).

The Tax Court began its detailed analysis by quoting its long-standing position that "[w]hen an accounting practice merely postpones the reporting of income, rather than permanently avoiding the reporting of income over the taxpayer's lifetime, it involves the proper time for reporting income."[8] The court observed that Brookshire neither altered its overall plan of accounting for income and deductions on an accrual basis nor changed its basic system of accounting for depreciation under MACRS. The change from straight line deduction of depreciation over a 31.5 or 39 year period to the declining balance method over a 15-year period, however, impressed the Tax Court as involving the timing of deductions rather than the total amount of lifetime income. At first glance, this appeared to be a material difference and thus potentially a change in accounting method. According to the court, however, this putative change is subject to the exception earlier noted that an adjustment in the useful life of a depreciable asset does not constitute a change in the taxpayer's method of accounting, regardless of the fact that these kinds of adjustments may involve the time for taking such deductions.[9]

For the Tax Court, Brookshire's change within MACRS from the lengthy straight line approach to the shorter declining balance approach cannot constitute a material alteration for purposes of

_____

[8] Wayne Bolt & Nut Co. v. Commissioner, 93 T.C. 500, 510 (1989).

[9] See Treas. Reg. § 1.446-1(e)(2)(ii)(b).

7

IRC § 446(e) if that change properly falls under the "useful life" exception of the regulations. The Commissioner insists that "useful life" is an obsolescent term of art that did not survive adoption of MACRS. The implication of the Commissioner's argument is that the useful life exception died with the adoption of ACRS, as amended by MACRS, so that —— absent a new regulation applying the concept to the "arbitrary"[10] times available for depreciation deductions —— there is no basis of excepting a change like Brookshire's by analogy to useful life.

The Tax Court perceived the useful-life analogy as being apposite to the instant situation and saw no distinguishing difference for purposes of applying the useful-life exception here. It did, however, find somewhat troubling the linkage of recovery period and depreciation method under MACRS, as there had been no such linkage under the prior, useful-life system.[11]

The Tax Court discerned a dilemma arising from, on the one

---

[10] Although the useful-life system had its genesis in a theoretical nexus between the myriad types of depreciable property and the actual term of utility for each type, in reality the various terms of useful life argued and accepted by the government impress us as having been no less arbitrary than the terms assigned under ACRS and MACRS.

[11] The court read prior Tax Court precedent as distinguishing a change in depreciation method from a change in timing, citing Standard Oil Co. (Indiana) v. Commissioner, 77 T.C. 349, 410-11 (1981) and Casey v. Commissioner, 38 T.C. 357, 384-87 (1962) as recognizing a dichotomy that would not exclude the former from the consent requirement on the basis of the useful-life exception. Candidly, we do not read the cases as making that distinction.

8

hand, the analogy between the years for depreciating assets under MACRS and the old useful-life system, and, on the other hand, the MACRS linkage of depreciation method and period of recovery. The court nevertheless concluded that analogizing the treatment of useful life as an exception pursuant to the never-repealed, pre-MACRS regulation better accords with the overall regulatory scheme of the Tax Code and regulations than would the denial of the exception on the slender reed of that apparent linkage.

Even though we perceive no such dilemma, we fully agree with the Tax Court that the applicable regulations were meant to allow taxpayers to make temporal changes in their depreciation schedules without prior consent of the Commissioner. Clearly, doing so would produce changes in the length of time over which deductions are taken as well as concomitant changes in the amount of the deduction for any given tax year —— and such a change under MACRS would produce exactly the same results. It follows that we also agree with the Tax Court's resolution of its perceived dilemma by holding that Brookshire's change in the classification of its gas station properties from straight line depreciation of non-residential real estate to declining balance depreciation of 15-year property does not equate with a change in the taxpayer's method of accounting for purposes of IRC § 446. And, absent such a change, consent of the Commissioner was not required. We affirm the judgment of the Tax

9

Court for the reasons given in its Memorandum Opinion.[12]

C.   The Commissioner's Challenge to the Wrong Tax Years

Brookshire urges on appeal, as in the Tax Court, that the Commissioner's acceptance of the amended returns for tax years ending 1993-95, including payment of refunds to Brookshire for its overpayment of taxes under the original returns for those years, amounts to consent by the Commissioner for such a change, even if it is assumed arguendo that, as a matter of law, the reclassification of the gas station properties did constitute a change in accounting method for purposes of IRC § 446(e).  Not surprisingly, the Commissioner has taken the position — and forcefully urged it again at oral argument — that acceptance of amended returns, including payment of refunds based on such returns, does not bind the government on indirect issues such as consent; neither does such acceptance constitute waiver, estoppel, or other preclusion of a subsequent challenge by the Commissioner to positions taken by the taxpayer in such returns.

Because we need not, we do not decide what preclusive effects, if any, the Commissioner's acceptance of amended returns or actions based on them might produce.  Rather, we address the significance of the pervasive time bar in the federal taxation scheme to challenges that the Commissioner would mount in contesting the positions taken by the taxpayer in years that are no longer open,

_____

    [12] Brookshire Bros. Holding, Inc. v. Commissioner, 71 T.C.M. (CCH) 1799 (2001).

10

i.e., closed years. When we do so, we conclude that the Commissioner is barred from assessing a deficiency for the challenged tax years of 1996 and 1997 grounded solely on Brookshire's failure to obtain consent pursuant to IRC § 446(e): Brookshire made no change in either of the challenged years; if a change were made at all, it was in a prior year that was closed before the Commissioner assessed a deficiency.

The first tax year for which Brookshire reported the depreciation of its gas station properties under the declining balance, 15-year provision of MACRS was its tax year ending in April, 1993. For all subsequent tax years, including those for which the Commissioner would now assess deficiencies, Brookshire consistently took depreciation for its gas station properties the same way it did for 1993. Thus, even if we assume arguendo that there was a change in accounting methods at all and that it was not exempt under the useful-life exception, there still was only one change, and it is the one that was made for Brookshire's tax year ending April, 1993. As depreciation for all the following years was treated identically, there was no change for any subsequent year, specifically none for the tax years ending April, 1996 and 1997.

Therefore, for the Commissioner to challenge, as an unauthorized change in method, Brookshire's switch from straight line to declining balance under MACRS, he would have to have done so for 1993, the year for which that putative change was

instituted. Yet, as noted, 1993 was closed by the time the Commissioner assessed a deficiency, barring the Commissioner from challenging the alleged change in method implemented for that year ⸺ specifically for purposes of this case, the change in depreciation treatment for the gas station properties that was instituted by Brookshire in the amended return for its now-closed year ending April, 1993.

As noted, Treas. Reg. § 1.446-1(e)(3)(i) requires the taxpayer to secure the Commissioner's consent "during the <u>taxable year</u> in which the taxpayer desires to <u>make the change</u> in method of accounting" (emphasis added). We conclude that, inasmuch as (1) the purported <u>change</u> now challenged by the Commissioner for the open years of 1996 and 1997 was not made in the returns for either of those years but instead was made in the return for the tax year ending 1993, and (2) there has been only that one change, the Commissioner is barred from challenging as unauthorized the change made first for purposes of the closed year of 1993. Stated differently, even if we assume that there was such a change and that the Commissioner could not be held to have consented to it by accepting amended returns and paying refunds for the years covered by such returns (i.e., no alternative or implied consent, no waiver, no preclusion), he is nevertheless (1) time barred from asserting lack of consent for the closed tax year ending in 1993, and (2) precluded from challenging the continued use of the putative 1993 change by assessing deficiencies in subsequent, open

12

years, beginning with 1996. This is so because no change — either authorized or unauthorized — was made for any tax year after 1993: The depreciation method employed by Brookshire in the income tax returns for the years 1996 and following had been implemented for tax year 1993 and employed in all subsequent years without further change. Thus, even assuming arguendo that Brookshire Brothers violated IRC § 446(e) when it submitted its amended returns for 1993, 1994, and 1995, once those tax years closed, Brookshire Brothers had a legally unassailable history of accounting treatment that did not thereafter "change," either in 1996 or in the original returns for that and subsequent open years. As such, Treas. Reg. § 1.446-1(e)(3)(i) plays no part in the analysis of those open years, because returns were timely prepared and filed without any change in the treatment of depreciation of the gas station properties. As the same treatment was employed consistently and without change in the taxpayer's returns covering of the three preceding (closed) years, there could be no "change" for 1996 and following. Simply put, we cannot approbate the Commissioner's collateral, back-door attack to get around the time bar for closed years.

## III. Conclusion

For the foregoing reasons, we agree with the analysis of the Tax Court that the kind of change implemented by Brookshire for tax years ending in April, 1993 and following is the functional equivalent of a change in useful life, no more and no less.

13

Consequently, the useful life exception, which still exists in the regulatory scheme applicable to the instant case, exempted Brookshire from the need to have obtained the consent of the Commissioner under IRC § 446(e) by filing a Form 3115 before implementing the alleged change in accounting method.

Furthermore, even if Brookshire's shift in reporting depreciation on its gas station properties from straight line/31.5 or 39 year to declining balance/15 year were to be deemed to constitute a change in accounting methods for purposes of IRC § 446, and such a change were not to be deemed exempt, under the useful-life exception, from IRC § 446(e)'s requirement of prior Commissioner consent, the instant assessment of a deficiency against Brookshire for tax years ending 1996 and 1997 must nevertheless fail. The change in accounting method asserted by the Commissioner did not occur in those years: Rather, the only change alleged by the Commissioner was made for Brookshire's now-closed tax year ending 1993, and it is immune from challenge by virtue of the time bar applicable to closed years.

For these reasons, the judgment of the Tax Court in favor of Brookshire is, in all respects, AFFIRMED.