# United States Tax Court

T.C. Memo. 2023-40

CONMAC INVESTMENTS INC.,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 2207-18.                    Filed March 27, 2023.

————

*Kevin M. Flynn*, for petitioner.

*Steven D. Tillem* and *Philip R. Cleary*, for respondent.


## MEMORANDUM OPINION

PARIS, *Judge*: This case is before the Court on respondent's Motion for Summary Judgment and petitioner's Cross-Motion for Summary Judgment under Rule 121.[1] The issues for decision are (1) whether petitioner's failure to secure consent under section 446(e) precludes petitioner from implementing an accounting method change with respect to base acres rented to tenant farmers for taxable years 2009 through 2014 and (2) whether petitioner must include in income for 2013 a positive section 481 adjustment for section 197 amortization deductions claimed for base acres for 2009 through 2012.

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code), in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

**[\*2]**                             *Background*

The following facts are drawn from the record, which includes the parties' Stipulation of Facts with attached Exhibits. Petitioner is a domestic corporation duly organized under the laws of Arkansas. It had a principal place of business in a rural agricultural community in northeast Arkansas when it filed the Petition. Petitioner owns and leases farmland in Arkansas to tenant farmers, among several other businesses it owns and operates.

I.       *Corporation Income Tax at Issue*

Pursuant to extensions of time to file, petitioner timely filed Forms 1120, U.S. Corporation Income Tax Return, for 2013 and 2014 (years at issue). In a timely issued notice of deficiency dated December 18, 2017, respondent determined deficiencies in petitioner's 2013 and 2014 federal corporation income tax of $115,854 and $114,042, respectively. The deficiencies reflected adjustments with respect to petitioner's unauthorized accounting method change for amortization of base acres rented to tenant farmers and claimed deductions for rental and vehicle expenses, depreciation expenses, and charitable contributions. Petitioner timely petitioned this Court contesting the deficiencies determined in the notice.

On October 25, 2018, the parties filed a Stipulation of Settled Issues, which resolved all outstanding issues in the case except (1) whether petitioner's income should be increased by $185,555 and $44,980 for 2013 and 2014, respectively, on the basis of a determination that petitioner was precluded from changing its accounting method for amortization of base acres rented to tenant farmers without the Secretary's consent, as required by section 446(e),[2] and, even if section 446(e) did not apply, whether petitioner's new accounting method was not permitted under the Code or the regulations; and (2) whether petitioner is liable under section 6621(c) for interest on a large corporate underpayment for those same years. Subsequently, but before filing the pending Motion and Cross-Motion for Summary Judgment, the parties agreed that the section 6621(c) issue is not appropriately before the Court.

---

[2] The regulation uses "consent of the Commissioner" instead of "consent of the Secretary." Treas. Reg. § 1.446-1(e)(2)(i); *see also* § 7701(a)(11)(B) and (12).

**[\*3]**    In regard to the first issue, the adjustment of $185,555 for 2013 consists of two parts: (1) a section 481 adjustment of $137,181 relating to petitioner's unauthorized amortization of base acres rented to tenant farmers in 2009 through 2012 plus (2) an adjustment of $48,374 relating to unauthorized amortization of base acres rented to tenant farmers in 2013. The adjustment of $44,980 for 2014 relates to petitioner's unauthorized amortization of base acres rented to tenant farmers in that year.

With the Court's permission, respondent filed a Second Amendment to Answer seeking an increased deficiency under section 6214(a). The amendment increased the section 481 adjustment for 2009 through 2012 from $137,181 to $141,614.

II.    *Base Acres*

Created by Congress, "base acres," also known as acreage base or crop contracts, are the right to receive farm program subsidies for the production of certain commodities from the U.S. Department of Agriculture (USDA).[3] These rights, which attach to the farm, not the farm owner, are determined using the historical planted acreage of a specific covered commodity, such as wheat, cotton, or rice. The farm program payments at issue were made both under the 2008 Farm Bill,[4] as extended by the American Taxpayer Relief Act of 2012,[5] and under the 2014 Farm Bill.[6]

---

[3] The current farm program subsidies originate from the Farm Security and Rural Investment Act of 2002, Pub. L. No. 107-171, tit. I, 116 Stat. 134, 143–223 (codified as amended in 7 U.S.C. § 7901 and scattered sections).

[4] Food, Conservation, and Energy Act of 2008 (2008 Act), Pub. L. No. 110-234, 122 Stat. 923. 2008 Act § 1001(2)(A) provides: "The term 'base acres', with respect to a covered commodity on a farm, means the number of acres established under section 1101 of the Farm Security and Rural Investment Act of 2002 as in effect on September 30, 2007," subject to any adjustment by the 2008 Act. 122 Stat. at 936 (citation omitted) (codified as amended at 7 U.S.C. § 8702). Excluded are base acres for peanuts, which are defined in a different but corresponding section of the Farm Security and Rural Investment Act of 2002. 2008 Act § 1301, 122 Stat. at 966–67 (codified as amended at 7 U.S.C. § 8751).

[5] Pub. L. No. 112-240, 126 Stat. 2313 (2013).

[6] Agricultural Act of 2014, Pub. L. No. 113-79, 128 Stat. 649. Section 1111(4) of that act carries forward the 2008 definitions of base acres, subject to certain reallocations, adjustments, and reductions. 128 Stat. at 659 (codified as amended at 7 U.S.C. § 9011).

[*4]    Petitioner acquired and placed in service farmland that included base acres in 2004, 2006, 2007, 2008, 2010, 2011, 2012, and 2013.[7] Petitioner did not farm any of these base acres during the years at issue. Instead, all of the base acres at issue, if farmed, were farmed by tenant farmers. In addition, all base acre payments, if made, were paid to and collected by tenant farmers.

None of the lease agreements between petitioner and the tenant farmers were evidenced by writing. The annual rental rate for the oral lease agreements was generally 25% of the gross income received by the tenant farmers from their farming activities. Under these agreements, the gross income of the tenant farmers included the farm subsidy payments that they received on account of the base acres the farmers rented from petitioner.[8]

Petitioner reported the rental income on its Forms 1120 for 2013 and 2014. As a corporation, petitioner was not required to attach to the returns Schedule F, Profit or Loss From Farming, to report farm income or expenses.

III.    *Petitioner's Change in Treatment of Amortization or Depreciation of Base Acres Rented to Tenant Farmers*

Before 2009 petitioner did not claim any deductions for amortization or depreciation of base acres rented to tenant farmers. Beginning in 2009, however, petitioner adopted a new treatment for amortization or depreciation of certain base acres rented to tenant farmers and began claiming an amortization or depreciation deduction for base acres acquired and placed in service in 2004 continuing through 2013.[9] Petitioner did not attach Form 3115, Application for Change in Accounting Method, to its Form 1120 for 2009 or otherwise seek or obtain respondent's consent to change its accounting method with respect to the rented-out farmland in 2009 or thereafter. Neither did petitioner file amended returns with an explanatory statement for all

_____

[7] Although petitioner acquired farmland with base acres before 2004, those base acres are not at issue in this case.

[8] Despite asserting an ownership interest in an intangible asset, petitioner shares little risk in the production of crops on any given farm, effectively shifting the risk to the tenant farmer. Petitioner claims deductions against guaranteed rental income without assuming the risk of any other expenses.

[9] Petitioner decided not to include in its amortization deductions any base acres acquired before 2004.

**[*5]** open years reclassifying the base acres rented to tenant farmers as amortizable section 197 intangibles. Nor did it adopt the same accounting treatment for all base acres that it owned.

To determine the claimed deductions, petitioner developed a methodology to calculate an average farm subsidy payment per base acre rented to tenant farmers. Petitioner, selecting 2009 as the reference year, determined its average farm subsidy payment per rented-out base acre to be \$39.62.[10] Petitioner then calculated the present value of its average farm subsidy payment over a 15-year period,[11] which worked out to be \$431.81.[12] Using this present value, petitioner derived a proposed amount for the amortization or depreciation of its base acres each year, multiplying its total number of rented-out base acres by \$431.81 and then dividing that amount by 15 to recognize the amortization or depreciation expense on a straight-line basis over 15 years. Using the methodology it devised, petitioner reported amortization or depreciation expenses for base acres rented to tenant farmers of \$141,614.26 for 2009 through 2012, \$48,373.82 for 2013, and \$44,980.21 for 2014.[13] By deducting its amortization expense, petitioner was able to reduce its recognition of income paid by the tenant farmers.

In the notice of deficiency for 2013 and 2014, respondent determined that petitioner's new accounting treatment for amortization or depreciation of base acres rented to tenant farmers was not a permissible accounting method and increased petitioner's income accordingly. The remaining issue involves whether, as a matter of law, petitioner was foreclosed from unilaterally changing its accounting method with respect to such amortization or depreciation in 2009. On January 19, 2023, pursuant to this Court's Order, each party filed a Supplemental Memorandum addressing this issue, giving particular attention to (1) the relevance to the present case of the Court's prior opinions on the section 446(e) consent requirement, *see, e.g.*, *Sunoco, Inc. & Subs. v. Commissioner*, T.C. Memo. 2004-29, 2004 WL 205817, and (2) whether petitioner's failure to secure prior consent under section

---

[10] This average was calculated from 6,624.45 base acres rented to tenant farmers, which generated USDA farm subsidy payments to the farmers totaling \$262,484.50.

[11] Petitioner's stated rationale for using a 15-year period included the longstanding existence of USDA farm subsidies and the generally applicable 15-year amortization period of intangibles.

[12] Petitioner's present value analysis assumed an interest rate of 5%.

[13] The parties have stipulated the amounts of deductions claimed.

**[\*6]** 446(e) in and of itself would preclude petitioner from implementing an accounting method change for 2009 through 2014.

## *Discussion*

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). The Court may grant summary judgment upon any or all legal issues in controversy when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(b); *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). In determining whether to grant summary judgment, the Court reviews the facts in the record and draws inferences from them in the light most favorable to the nonmoving party. *Bond v. Commissioner*, 100 T.C. 32, 36 (1993); *Naftel v. Commissioner*, 85 T.C. 527, 529 (1985). The nonmoving party may not, however, rest upon the allegations or denials in its pleadings but must set forth specific facts showing that there is a genuine issue for trial. Rule 121(d); *Sundstrand Corp.*, 98 T.C. at 520. Because the parties agree upon the facts necessary to resolve the specific questions of law before us, we conclude summary adjudication is appropriate in this matter.

I.  *Unauthorized Change in Accounting Method for Amortization or Depreciation of Base Acres Rented to Tenant Farmers*

Section 446 requires a taxpayer to compute taxable income "under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books." § 446(a). A taxpayer has considerable discretion in selecting an accounting method and generally may adopt any permissible method. Treas. Reg. § 1.446-1(e)(1).

An accounting method consists of both "the overall plan of accounting for gross income or deductions" and "the treatment of any material item used in such overall plan." *Id.* subpara. (2)(ii)(*a*). An item is "material" if it "involves the proper time for the inclusion of the item in income or the taking of a deduction." *Id.*

In most instances, an accounting method is adopted for a material item if there is "a pattern of consistent treatment" of that item. *Id.* This is true "even if that treatment is erroneous or an incorrect application of a chosen method." *Thrasys, Inc. v. Commissioner*, T.C. Memo. 2018-199, at \*12 (quoting *Cap. One Fin. Corp., & Subs. v. Commissioner*, 659 F.3d

**[\*7]** 316, 326 (4th Cir. 2011), *aff'g* 130 T.C. 147 (2008) *and* 133 T.C. 136 (2009)).

What constitutes consistent treatment, however, differs for permissible and impermissible methods of accounting. A permissible method is generally adopted when a taxpayer files his first return using the method, Treas. Reg. § 1.446-1(e)(1), whereas an impermissible method is established only after a taxpayer files two or more consecutive returns using the method, *Thrasys, Inc.*, T.C. Memo. 2018-199, at \*12–13.

Once an accounting method has been adopted, it generally may not be changed without the Commissioner's permission. § 446(e). "[A] change in the treatment of an asset from nondepreciable or nonamortizable to depreciable or amortizable, or vice versa, is a change in method of accounting." Treas. Reg. § 1.446-1(e)(2)(ii)(*d*)(*2*). However, "[a] change in the method of accounting . . . does not include a change in treatment resulting from a change in underlying facts." *Id.* subdiv. (ii)(*b*).

Petitioner did not claim a deduction for amortization or depreciation of base acres before 2009. That year, petitioner made a "business decision" to begin claiming amortization deductions but only with respect to rented-out farmland that it had acquired and placed in service beginning in 2004.

Petitioner maintains that its change in tax reporting was based on a change in underlying facts. However, petitioner never identifies what facts changed despite having ample opportunity to do so. Instead, petitioner contends that existing federal tax law allegedly allowed it to allocate and deduct a portion of the purchase price of tillable farmland using the present value of future farm program subsidy payments, and therefore that the company did not change its accounting method.

To support this position, petitioner wants the Court to adopt a selective reading of Treasury Regulation § 1.446-1(e)(2)(ii)(*b*). Although petitioner is correct that a change in treatment due to a change in underlying facts is not a change in accounting method, *id.*, petitioner has failed to demonstrate to the Court a change in underlying facts that would permit petitioner's change in treatment of amortization or

**[\*8]** depreciation of base acres rented to tenant farmers.[14] To arrive at its desired conclusion, petitioner would require this Court to ignore the sentence immediately succeeding the proffered support: "For further guidance on changes involving depreciable or amortizable assets, see paragraph (e)(2)(ii)(d) of this section and § 1.1016-3(h)." *Id.*

Because we read the regulations to foreclose this outcome, *see id.* subdiv. (ii)(*d*)(*2*), we are not persuaded by petitioner's arguments. "A change in tax reporting generally will be attributable to a 'change in underlying facts' and not to a 'change in method of accounting,' where the taxpayer continues to apply its existing method of accounting to a change in business practices, a change in economic or legal relationships, or an otherwise altered fact situation." Stephen F. Gertzman, *Federal Tax Accounting* ¶ 9.06 (2022), Westlaw FTA WGL. Yet none of that occurred here. Petitioner did not change its existing business practices; rather, it continued to serve as a landlord to tenant farmers. Nor did petitioner change any of its economic or legal relationships—for example, through modification of lease agreement terms. *See Hallmark Cards, Inc. & Subs. v. Commissioner*, 90 T.C. 26 (1988) (change in contractual terms resulting in change in timing of recognition of sales). The only economic consequence we are left with appears to be the tax benefit that petitioner received on account of the change, which we have determined to be insufficient. *See Gap Anthracite Co. v. Commissioner*, T.C. Memo. 1972-189, *aff'd without published opinion sub nom. Susquehanna Coal Co. v. Commissioner*, 487 F.2d 1395 (3d Cir. 1973). And, unlike this Court's precedents in *Southern Pacific Transportation Co. v. Commissioner*, 75 T.C. 497 (1980), and *Federated Department Stores, Inc. v. Commissioner*, 51 T.C. 500 (1968), *aff'd*, 426 F.2d 417 (6th Cir. 1970), this case features no altered fact situation (besides petitioner's decision to start claiming a deduction).[15] Petitioner's "subjective misunderstanding of fact or law" was not "a change in underlying facts" within the meaning of the regulation. *See Pinkston v. Commissioner*, T.C. Memo. 2020-44, at \*22–23. Accordingly, we determine petitioner's change in the treatment of the rented-out acreage base at issue from nonamortizable to amortizable beginning in 2009 was a change in accounting method.

---

[14] Neither the express wording of the regulation nor the examples in paragraph (e)(2)(iii) of the regulation lend support to petitioner's specific factual scenario.

[15] We also note that these two cases precede the effective date of Treasury Regulation § 1.446-1(e)(2)(ii)(*d*)(*2*), which applies to depreciable or amortizable assets placed in service in tax years ending on or after December 30, 2003.

**[\*9]** Further, to make this method change, petitioner was required to obtain respondent's permission. *See* § 446(e). Typically, permission is obtained by filing Form 3115. Prior consent is required regardless of whether the existing method is proper or permitted. Treas. Reg. § 1.446-1(e)(2)(i). A taxpayer's failure to secure such consent gives the Commissioner authority to return the taxpayer to his former method—even if the former method was not a permissible method. *See, e.g., Sunoco, Inc. & Subs. v. Commissioner*, 2004 WL 205817, at \*14–16.

Petitioner did not file Form 3115 for 2009 or otherwise seek or obtain respondent's permission to change its accounting method for 2009 or thereafter. Petitioner believes it was not required to do so and that, even if it was, the lack of prior consent is irrelevant because it relates to a closed tax year. We disagree.

Although the case is not cited by either party, the U.S. Court of Appeals for the Fifth Circuit held in *Commissioner v. Brookshire Bros. Holding, Inc.*, 320 F.3d 507, 511–13 (2003), *aff'g* T.C. Memo. 2001-150, that the Commissioner's challenge to a method change for which consent was never given must be for the year of the improper change and that the failure to obtain prior consent pursuant to section 446(e) does not serve as a basis to challenge such a change for a closed year. We find the Fifth Circuit case to be distinguishable from the case at hand, however. Unlike the taxpayer in *Brookshire Bros.*, petitioner did not file amended returns with an explanatory statement for all open years reclassifying the property at issue (i.e., base acres rented to tenant farmers). Nor did petitioner adopt the same accounting treatment for all property within the same class of property (i.e., base acres). Instead, petitioner continued to treat base acres acquired and placed in service in other years as nonamortizable or nondepreciable. Upholding an unauthorized change in accounting method in an instance like this would invite inconsistency in a context where "[c]onsistency is the key and is required regardless of the method or system of accounting used." *See Commissioner v. O. Liquidating Corp.*, 292 F.2d 225, 231 (3d Cir. 1961) (quoting *Advertisers Exch., Inc. v. Commissioner*, 25 T.C. 1086, 1092 (1956), *aff'd*, 240 F.2d 958 (2d Cir. 1957)), *rev'g on other grounds* T.C. Memo. 1960-29.

Moreover, sustaining respondent's determination, which would merely return petitioner to its old accounting method, one that it chose to use for many years, does not offend basic fairness. It also promotes sound tax administration. Therefore, by allowing respondent's actions to stand, we do not risk "approbat[ing] . . . [a] collateral, back-door attack

**[\*10]** to get around the time bar for closed years." *Commissioner v. Brookshire Bros. Holding, Inc. & Subs.*, 320 F.3d at 513.

Accordingly, we conclude petitioner was precluded from implementing its method change for 2009 through 2014 because of its failure to secure prior consent under section 446(e).[16] Therefore, we sustain respondent's determinations that petitioner's 2013 and 2014 income should be increased by $48,374 and $44,980, respectively, and will proceed to consider whether respondent's section 481 adjustment for 2009 through 2012 is proper.

II.  *Section 481 Adjustment Resulting from Amortization Deductions Claimed for Base Acres for 2009 through 2012*

Respondent's method determination is afforded great latitude and should be upheld unless clearly unlawful. *See Thor Power Tool Co. v. Commissioner*, 439 U.S. 522, 532–33 (1979). Respondent determined that petitioner's amortization of base acres rented to tenant farmers was an unauthorized change in accounting method. Therefore, respondent was entitled to change petitioner's accounting method with respect to those rented-out base acres back to petitioner's accounting method before the unauthorized change.

When the Commissioner changes the treatment of an asset from nondepreciable or nonamortizable to depreciable or amortizable (or vice versa), the change results in a section 481 adjustment. *See* Treas. Reg. § 1.446-1(e)(2)(ii)(*d*)(*5*)(*iii*). Section 481 adjustments prevent the duplication or omission of income or deductions when a change in method occurs. Such adjustments reflect the cumulative difference between the new and the old methods.

Petitioner contends that, even if a section 481 adjustment was permissible, it needed to have been made for the "year of the change," which petitioner defines to be 2009. Because this year is closed by the statute of limitations on assessment, petitioner maintains that no section 481 adjustment would be allowed.

Petitioner's conclusion is incorrect, however. The "year of the change" in this case is the oldest open tax year. *See Buyers Home Warranty Co. v. Commissioner*, T.C. Memo. 1998-98, 1998 WL 99336,

---

[16] Consequently, this Opinion does not further address petitioner's belated arguments in regard to whether the new, unauthorized accounting method was permitted under the Code or the regulations.

**[\*11]** at \*3*; Handy Andy T.V. & Appliances, Inc. v. Commissioner*, T.C. Memo. 1983-713. In addition, and importantly for our purposes, a section 481 adjustment may include amounts attributable to otherwise time-barred tax years. *See Huffman v. Commissioner*, 126 T.C. 322 (2006), *aff'd*, 518 F.3d 357 (6th Cir. 2008); Rev. Proc. 2015-13, § 2.06(1), 2015-5 I.R.B. 419, 425. In fact, "[t]he only limitation on § 481(a) adjustments is that no pre-1954 adjustments shall be made." *Mingo v. Commissioner*, 773 F.3d 629, 636 (5th Cir. 2014) (alteration in original omitted) (quoting *Commissioner v. Welch*, 345 F.2d 939, 950 (5th Cir. 1965), *rev'g* T.C. Memo. 1963-38), *aff'g* T.C. Memo. 2013-149. "[O]nce there has been a change in the method of accounting, no statute of limitations applies to the Commissioner's ability to correct errors on old tax returns." *Id.*

In discussing this "notable" feature of section 481, this Court recognized in *Huffman* that "[w]hile section 481 may not necessarily conflict with the statute of limitations found in section 6501 . . . , it does place a premium on distinguishing between the correction of errors (which is limited to open years) and a change in a method of accounting (which implicates section 481)." *Huffman*, 126 T.C. at 341–42 (citing *Superior Coach of Fla., Inc. v. Commissioner*, 80 T.C. 895, 912 (1983)). The U.S. Court of Appeals for the Sixth Circuit confirmed the Court's approach in *Huffman*, holding that so long as a "'change in method of accounting' has occurred," the Commissioner may "adjust a taxpayer's taxable income in an open year to reflect amounts attributable to years for which the applicable statute of limitations has expired." *Huffman v. Commissioner*, 518 F.3d at 358. And here, as in *Handy Andy T.V. & Appliances, Inc.*, T.C. Memo. 1983-713, a section 481 adjustment back to the original method (to the closed year) is necessary to prevent the omission of income.

Accordingly, we sustain respondent's section 481 adjustment of $141,614 relating to petitioner's unauthorized amortization deductions for 2009 through 2012.

III. *Conclusion*

The Court holds that petitioner's new accounting method is impermissible because petitioner violated the section 446(e) consent requirement. The Court also holds that because respondent properly returned petitioner to its old accounting method, respondent's section 481 adjustment relating to petitioner's unauthorized method change in 2009 is sustained to prevent the omission of income. Accordingly, the

**[\*12]** Court will grant respondent's Motion for Summary Judgment and deny petitioner's Cross-Motion for Summary Judgment. We will also deny as moot respondent's Motion to Strike. Because respondent's Second Amendment to Answer increased the deficiency for 2013 as determined in the notice of deficiency, the parties will be ordered to submit a Rule 155 computation.[17]

To reflect the foregoing,

*An appropriate order will be issued, and decision will be entered under Rule 155.*

---

[17] The stipulations in the Stipulation of Settled Issues are concessions that do not change the adjustments set forth in the notice of deficiency and, as a result, will not affect the Rule 155 computation.