T.C. Memo. 2013-149

UNITED STATES TAX COURT

LORI M. MINGO AND JOHN M. MINGO, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 17753-07, 21906-10.          Filed June 12, 2013.

Harold A. Chamberlain, for petitioners.

Andrew Michael Tiktin and Derek P. Richman, for respondent.

MEMORANDUM OPINION

PARIS, Judge:  In these consolidated cases, respondent issued two notices

of deficiency, taking alternative positions with respect to the reporting of

petitioners' sale of a partnership interest in tax year 2002.  On May 23, 2007,

respondent issued a notice of deficiency to petitioners for tax year 2003

[*2] determining a Federal income tax deficiency of $45,510. On July 21, 2010, respondent issued a notice of deficiency to petitioners for tax year 2007 alternatively determining a Federal income tax deficiency of $59,527 and an accuracy-related penalty under section 6662(a)[1] of $11,905.40. Respondent concedes that petitioners are not liable for this accuracy-related penalty.

Petitioners seek redetermination of the above-stated deficiencies. The issues for decision are:

(1) whether petitioners are entitled to report the sale of petitioner Lori M. Mingo's partnership interest as an installment sale for the portion of the proceeds attributable to that partnership's unrealized receivables;

(2) whether, if petitioners are not entitled to report the portion of Mrs. Mingo's partnership proceeds attributable to unrealized receivables as an installment sale, petitioners' reporting of that sale constituted the election of an accounting method under section 446 such that section 481(a) applies;

(3) additionally, if section 481(a) applies, whether petitioners must recognize ordinary income of $126,240 under section 481(a) for tax year 2003 as a result of respondent's change of their accounting method with respect to the sale;

---

[1]Unless otherwise indicated, section references are to the applicable versions of the Internal Revenue Code, and Rule references are to the Tax Court Rules of Practice and Procedure.

**[\*3]**   (4) alternatively, whether petitioners must recognize ordinary income of $126,240 from the sale of Mrs. Mingo's interest in the partnership's unrealized receivables for tax year 2007 when the installment note issued in the sale of Mrs. Mingo's partnership interest was satisfied in full;

(5) whether, if petitioners must recognize $126,240 as ordinary income for tax year 2003 or 2007, petitioners are entitled to a decrease in reported long-term capital gains in the same amount for tax year 2007; and

(6) whether petitioners are entitled to a long-term capital loss of $217,402 for tax year 2007 with respect to the conversion of the installment note received from the sale of Mrs. Mingo's partnership interest.

Background

The parties submitted these cases for decision fully stipulated under Rule 122(a).  The stipulation of facts filed on October 7, 2011, supplemented on March 5 and April 27, 2012, and amended on May 1, 2012, is incorporated herein by this reference.  Petitioners resided in Texas at the time their petitions were filed.

Petitioners are husband and wife and were married for the years at issue. Mrs. Mingo joined PricewaterhouseCoopers, LLP (PWC) sometime before tax year 2002.  Mrs. Mingo was a partner in the management consulting and technology services business (consulting business) of PWC until tax year 2002,

[*4] when PWC sold its consulting business to International Business Machines Corporation (IBM).[2]

As an initial step in the transaction, PwCC, L.P. (PwCC), a partnership, was formed in April or May 2002. PwCC was owned by certain subsidiaries of PWC. As part of the transaction, PWC transferred its consulting business to PwCC. Among the assets PWC transferred to PwCC were its consulting business' uncollected accounts receivable for services it had previously rendered (unrealized receivables). PWC then transferred to each of the 417 consulting partners (collectively, consulting partners) an interest in PwCC and cash in exchange for the partner's interest in PWC. Mrs. Mingo was one of these partners, and she received a partnership interest in PwCC and cash from PWC in exchange for her partnership interest in PWC.

The value of Mrs. Mingo's partnership interest in PwCC as of October 1, 2002, was $832,090, of which $126,240 was attributable to her interest in partnership unrealized receivables. On that date, PWC caused its subsidiaries to sell their respective interests in PwCC to IBM. At the same time, the consulting partners sold their respective interests in PwCC to IBM in exchange for

---

[2]Hereinafter, the steps taken to accomplish this sale are referred to, as a whole, as the transaction.

[*5] convertible promissory notes. At the end of the transaction, IBM owned 100% of the consulting business.

On October 1, 2002, IBM gave Mrs. Mingo a convertible promissory note (note) for $832,090 in exchange for her interest in PwCC. The $126,240 attributable to her interest in partnership unrealized receivables was included in that face value. The note included the following terms:

(1) Mrs. Mingo had the right to convert all or any portion of the unpaid principal balance into IBM common stock at any time after the first anniversary of closing. However, any such conversion had to be in increments of $1,000 principal amounts or for the entire unpaid principal.

(2) unless the note is converted into IBM stock, IBM would pay interest on the unpaid principal balance semiannually.

(3) the outstanding principal amount of the note and any accrued and unpaid interest was due and payable on the fifth anniversary of the transaction's closing (i.e., October 1, 2007).

On their 2002 Federal income tax return and on an attached Form 6252, Installment Sale Income, petitioners reported the sale of Mrs. Mingo's interest in PwCC as an installment sale. The selling price, gross profit, and contract price

[*6] were listed as $832,090. Petitioners did not recognize any income relating to the note other than interest income on their 2002 Federal income tax return.

Petitioners did not convert any portion of the note during tax years 2002, 2003, 2004, 2005, and 2006. Petitioners also did not report any income other than interest income from the note for any of those years.

During tax year 2007 petitioners converted the entirety of the note in a series of transactions. On February 26, 2007, petitioners converted a portion of the note into shares of IBM stock worth $929,765. Also on February 26, 2007, petitioners sold those shares of IBM stock for a total of $899,287. On October 1, 2007, petitioners converted the remainder of the note into shares of IBM stock worth $283,494. Petitioners reported the following items of long-term capital gain and loss in connection with the conversion of the note on Schedule D, Capital Gains and Losses, of their amended 2007 Federal income tax return:

| Description of property | Date acquired | Date sold | Sales price | Cost basis | Gain (loss) |
|---|---|---|---|---|---|
| Exchange of installment obligation | 10/1/2002 | 2/26/2007 | $929,765 | -0- | $929,765 |
| Exchange of installment obligation | 10/1/2002 | 10/1/2007 | 283,494 | -0- | 283,494 |

**[\*7]** Debt
converted to
stock
(nontaxable)     10/1/2002    10/1/2007   (217,402)    -0-    (217,402)

Petitioners reported net long-term capital gains on Schedule D of their 2007 tax return as $995,857. Petitioners calculated their tax on this amount to be $145,168 and timely paid the same.

In a letter dated December 27, 2006, respondent informed petitioners that their 2003 joint income tax return, which was filed timely under proper extensions on October 15, 2004, had been selected for a remote examination. On May 23, 2007, respondent issued to petitioners a notice of deficiency for tax year 2003. In the notice respondent determined that the amount Mrs. Mingo received in 2002 for her partnership interest in PwCC, to the extent it was attributable to partnership unrealized receivables, could not be reported under the installment method. Respondent determined that Mrs. Mingo's reporting of the sale in such a manner constituted the establishment of an accounting method for the purposes of section 446 and imposed a change of accounting method adjustment under section 481(a) for tax year 2003. The adjustment resulted in petitioners' recognizing ordinary income of $126,240 for tax year 2003, the amount of Mrs. Mingo's partnership interest that was attributable to unrealized receivables. On August 9, 2007,

**[*8]** petitioners timely filed a petition in this Court for redetermination of the deficiency for tax year 2003.

On July 21, 2010, respondent issued to petitioners a notice of deficiency for tax year 2007. In this notice respondent determined that, if respondent was not permitted to institute a method of accounting change under section 481(a) for tax year 2003, the amount Mrs. Mingo received in satisfaction of the note in tax year 2007, to the extent attributable to partnership unrealized receivables, would be properly classified as ordinary income. The effect of this determination was to increase petitioners' ordinary income by $126,240 for tax year 2007. The determination further determined that petitioners were liable for addition capital gain of $92,133 for tax year 2007. This increase consisted of three components:

(1) an increase to short-term capital gains of $971 from petitioners' sale of IBM stock on February 26, 2007;

(2) the disallowance of petitioners' claimed long-term capital loss of $217,402 from Mrs. Mingo's conversion of the note into IBM stock; and

(3) a reduction in reported long-term capital gains of $126,240 as a consequence of the determination that:

**[*9]**      (a) if amounts received attributable to unrealized receivables were

recognized as ordinary income for tax year 2003, Mrs. Mingo would

have a basis in the note of $126,240; or

(b) if amounts received attributable to unrealized receivables were

recognized as ordinary income for 2007, Mrs. Mingo would have a

reduction in capital gain because of the reclassification of this

income.

Respondent's notice of deficiency also determined an accuracy-related

penalty under section 6662(a) of $11,905.40; however, respondent has since

conceded that petitioners are not liable for this penalty.  On October 4, 2010,

petitioners timely filed a petition in this Court for review of respondent's

determination for tax year 2007.

Discussion

I.  Installment Method Reporting of Unrealized Receivables

Section 453(a) provides that, except as otherwise provided, income from an

installment sale shall be taken into account under the installment method.  An

installment sale is defined as a disposition of property where at least one payment

is to be received after the close of the taxable year in which the disposition occurs.

Sec. 453(b)(1).  The installment method is defined as a method under which the

**[*10]** income recognized for any taxable year from a disposition is that proportion of the payments received in that year which the gross profit (realized or to be realized when payment is completed) bears to the total contract price.  Sec. 453(c).

In the case of a sale or exchange of a partnership interest, gain or loss recognized to the transferor is considered gain or loss from the sale or exchange of a capital asset, except as otherwise provided by section 751.  Sec. 741.  Section 751(a) provides that the amount received by a transferor partner in exchange for all or part of a partnership interest shall be considered as an amount realized from the sale or exchange of property other than a capital asset, to the extent such amount is attributable to unrealized receivables or inventory items of the partnership.  The term "unrealized receivables" includes, to the extent not previously includible in income under the method of accounting used by the partnership, any rights (contractual or otherwise) to payment for services rendered or to be rendered.  Sec. 751(c)(2).

The purpose of section 751 is to prevent the conversion of potential ordinary income into capital gain when a partnership interest is sold or exchanged.  See Madorin v. Commissioner, 84 T.C. 667, 682 (1985).  The effect of section 751 is to sever certain income items to effectuate this purpose.  For the amount of a partnership interest attributable to inventory or unrealized receivables described in

[*11] section 751, the tax consequences to the transferring partner are "the same tax consequences which would be accorded an individual entrepreneur." H.R. Rept. No. 83-1337, at 70-71 (1954), 1954 U.S.C.C.A.N. 4017, 4098; S. Rept. No. 83-1622, at 99 (1954), 1954 U.S.C.C.A.N. 4621, 4732. Essentially, the transferring partner is treated as disposing of section 751 property "independently of the rest of his partnership interest." H.R. Rept. No. 83-1337, supra at 70, 1954 U.S.C.C.A.N. at 4097; S. Rept. No. 83-1622, supra at 98, 99, 1954 U.S.C.C.A.N. at 4731, 4732. It follows that the portion of gain attributable to section 751 property in the sale or exchange of a partnership may only be reported under the installment method to the extent that income realized on a direct sale of such property would be reportable under the installment method.

Gross income includes the fair market value of property or services received in exchange for other services. Sec. 61(a); Baker v. Commissioner, 88 T.C. 1282, 1288 (1987); Badell v. Commissioner, T.C. Memo. 2000-303; sec. 1.61-2(d)(1), Income Tax Regs. In the context of a direct sale, Mrs. Mingo was essentially given a property interest (a portion of the note) in exchange for the right to collect unpaid amounts in satisfaction of services her partnership had previously rendered (unrealized receivables). Standing alone, this transaction is a barter exchange, one in which a taxpayer would properly report the proceeds as ordinary income on his

[*12] Federal income tax return for the year in which the exchange occurred. Absent some authority to the contrary, a taxpayer would be unable to defer recognition of such income to a subsequent year.

In Sorensen v. Commissioner, 22 T.C. 321 (1954), a taxpayer was given several options to purchase stock as compensation for his services. He sold these options rather than exercising them and attempted to report his gain under section 44(b), I.R.C. 1939, the predecessor to section 453. The Court held that the installment sale provisions did not apply to the sale because "[t]he provisions of section 44 relate only to the reporting of income arising from the sale of property on the installment basis. Those provisions do not in anywise purport to relate to the reporting of income arising by way of compensation for services." Sorensen v. Commissioner, 22 T.C. at 342.

The reasoning of the Court in Sorensen still holds true. Nothing in section 453 or its associated legislative history suggests that Congress intended to allow taxpayers to escape the basic principles of revenue recognition by deferring compensation for services under the installment method. Petitioners do not dispute that $126,240 of the $823,090 face value of the note was attributable to unrealized receivables of the PwCC partnership. As illustrated above, those unrealized receivables, if sold in a direct sale, would not be eligible for installment

**[*13]** method reporting under section 453. Accordingly, the gain realized on Mrs. Mingo's partnership interest, to the extent attributable to partnership unrealized receivables, was likewise ineligible for installment method reporting under section 453. Petitioners should have properly reported an additional $126,240 of ordinary income on their 2002 Federal income tax return instead of reporting it under the installment method.

II. Tax Year 2003

Section 446(a) requires a taxpayer to compute taxable income under the method of accounting it regularly uses in keeping its books. Section 446(b) provides that if the method of accounting regularly used by the taxpayer does not clearly reflect taxable income, the computation of taxable income shall be made under such method as, in the Commissioner's opinion, does clearly reflect income. The Commissioner's authority under section 446(b) reaches not only to overall methods of accounting but also to a taxpayer's method of accounting for specific items of income and expense. Ford Motor Co. v. Commissioner, 102 T.C. 87, 100 (1994), aff'd, 71 F.3d 209 (6th Cir. 1995); Wang v. Commissioner, T.C. Memo. 1998-127.

A change in accounting method includes a change in the overall plan of accounting for gross income or deductions or a change in the treatment of any

[*14] material item used in such overall plan.  Sec. 1.446-1(e)(2)(ii)(a), Income Tax Regs.  A "material item" includes any item that involves the proper time for the inclusion of the item in income or the taking of a deduction.  Id.  An accounting practice involves the proper time for reporting income when it merely postpones the reporting of income rather than permanently avoiding the reporting of income over the taxpayer's lifetime.  Wayne Bolt & Nut Co. v. Commissioner, 93 T.C. 500, 510 (1989).

As discussed above, the portion of the note attributable to unrealized receivables should have been properly characterized as ordinary income for 2002.  The election to use the installment method here cannot change the character of the amount attributable to unrealized receivables, nor would it result in the avoidance of income over petitioners' lifetime.  The result would merely delay the recognition of such ordinary income from tax year 2002, where it should have properly been recognized, to tax year 2007.  Petitioners' use of the installment method to report the note implicates the proper timing for reporting income.  Accordingly, the sale of Mrs. Mingo's partnership interest is a "material item" for the purposes of section 1.446-1(e)(2)(ii)(a), Income Tax Regs.

Although a method of accounting may exist without the necessity of a pattern of consistent treatment of an item, in most instances an accounting method

[*15] is not established for an item without such consistent treatment. Id. Petitioners elected to report the sale of Mrs. Mingo's partnership interest on the installment method by attaching a Form 6252 to their joint 2002 Federal income tax return. For tax years 2003 through 2006 petitioners filed tax returns reflecting only interest income from the note. In tax year 2007 petitioners reported the proceeds from the sale when Mrs. Mingo converted the note into IBM stock as would typically be proper under the installment method of reporting income. Therefore, petitioners established a pattern of consistent treatment under the installment method of reporting for this material item.

Once the Commissioner determines that a taxpayer's method of accounting does not clearly reflect income, he has broad discretion to select a method of accounting that he believes properly reflects the income of the taxpayer. RACMP Enters. v. Commissioner, 114 T.C. 211, 219 (2000). The Commissioner's determination may be challenged only upon the showing of abuse of discretion. Id. Whether an abuse of discretion occurred depends upon whether the Commissioner's determination is without sound basis in fact or law. Id.

The foregoing analysis has shown the proceeds from the sale of Mrs. Mingo's partnership, to the extent those proceeds were attributable to partnership unrealized receivables, were not able to be reported under the installment method

[*16] of accounting. Such proceeds should properly have been reported as ordinary income in the year they were received as petitioners were not entitled to defer income recognition to a later year. It is clear that petitioners' chosen accounting method did not clearly reflect income with respect to the portion of the note attributable to partnership unrealized receivables.

Respondent changed petitioners' method of accounting with respect to partnership unrealized receivables from the installment method under section 453 to the cash receipts and disbursements method. Had the cash receipts and disbursements method been adopted at the time of the sale, petitioners would have properly reported $126,240 of ordinary income for tax year 2002 from the unrealized receivables. Such reporting would have clearly reflected income for tax year 2002. Respondent's determination to initiate a change in petitioners' accounting method was not without sound basis in fact or law and, therefore, was not an abuse of discretion.

Section 481(a) provides that in computing a taxpayer's taxable income after a change of accounting method has occurred, there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted. A section 481(a) adjustment may include amounts attributable to tax years outside the period

[*17] of limitations on assessment. <u>Bosamia v. Commissioner</u>, 661 F.3d 250, 257-258 (5th Cir. 2011), <u>aff'g</u> T.C. Memo. 2010-218. Respondent made a section 481(a) adjustment of $126,240 for tax year 2003, the year for which respondent initiated the change of accounting method. This adjustment was necessary to remedy the omission of ordinary income that occurred for tax year 2002 as a result of petitioners' impermissible election to use the installment method. Accordingly, respondent's determination that petitioners had additional ordinary income of $126,240 for tax year 2003 is sustained.

III. <u>Tax Year 2007</u>

   A. <u>Basis in the Note</u>

Section 453B provides that if an installment obligation is sold or exchanged, gain or loss shall result to the extent of the difference between the basis of the obligation and the amount realized in the sale. Under section 1011, the adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis determined under section 1012, adjusted as provided in section 1016. Section 1012 provides that, generally, the basis of property shall be the cost of such property. Section 1016 provides that proper adjustments to basis in respect of property shall in all cases be made for expenditures properly chargeable to capital.

[*18] Mrs. Mingo was issued the note at no cost to her. Therefore, her initial basis in the note was zero. However, respondent agrees that in finding that petitioners must recognize $126,240 of ordinary income relating to partnership unrealized receivables in 2003, petitioners should be afforded a basis adjustment in that amount. Respondent further agrees that the application of that basis should result in a decrease in petitioners' reported long-term capital gain for tax year 2007. Accordingly, petitioners are afforded a reduction in reported long-term capital gain of $126,240 for tax year 2007.

### B. Long-Term Capital Loss

Generally, taxpayers may claim as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. Sec. 165(a). Losses from sales or exchanges of capital assets are allowed to the extent prescribed in sections 1211 and 1212. Sec. 165(f). Under those limitations, noncorporate taxpayers must first offset capital losses against capital gains.

On their 2007 return petitioners claimed a long-term capital loss of $217,402. The entry related to this loss was labeled "debt converted to stock (non-taxable)". Respondent disallowed this loss, claiming that petitioners "do not

[*19] have basis[3] in the [N]ote and have not otherwise substantiated their entitlement to the loss".

On the worksheet the preparer used to prepare Schedule D of petitioners' 2007 return, there is a numerical breakdown of how the $217,402 claimed capital loss was calculated. Petitioners, using the market price of the IBM stock at the time the note was issued, divided the stock pledged in the note into shares attributable to partnership unrealized receivables and shares not attributable to partnership unrealized receivables. The resulting split reflects that 1,834.617 shares of IBM stock were attributable to partnership unrealized receivables (valued at $126,240 at the issuance of the note) and 10,127.162 to the remainder (valued at $696,850 at the issuance of the note).

Petitioners applied this allocation to the stock price at the time the note was redeemed to ascertain the amount of appreciation allocable to shares of stock attributable to partnership unrealized receivables. Petitioners determined that $91,162 of appreciation was allocable to the 1,834.617 shares attributable to partnership unrealized receivables. This $91,162 of appreciation, when added to

---

[3]Respondent's statement refers to his findings at the time of disallowance, the foregoing analysis notwithstanding.

[*20] the $126,240 attributable to unrealized receivables, equals the $217,402 that petitioners claimed as a capital loss.

Petitioners' position appears to be that, if they were liable to pay tax on the $126,240 portion of the note attributable to unrealized receivables in 2002, then they would have to have sold a portion of the stock equal to that amount to satisfy the liability. Had they sold that portion of the stock, it would not have had the opportunity to appreciate over the life of the note, and therefore petitioners should not be liable to pay tax on the amount of appreciation allocable to that portion of the note.

However, petitioners' position is misguided. While it may have been a matter of economic necessity based on petitioners' liquidity at the time, petitioners were not required by any authority to sell stock to satisfy their 2002 tax liability. Had petitioners paid the liability from another source at the time, they would have been entitled to a basis of $126,240 in the note. Partitioning the note only further illustrates the point that petitioners would still have been liable for $91,162 of capital gain with respect to those shares attributable to unrealized receivables, the difference between the $126,240 basis in those shares and the $217,402 sale price.

Even if the Court were to grant petitioners' argument that the stock had to be sold in 2002 to satisfy the liability, petitioners' position is untenable. Had

**[*21]** petitioners sold a portion of the stock and paid $126,240 to the IRS, they would not have had a right of access to that money anymore. They would forfeit all right to any appreciation or interest that would result from the investment of that money. Petitioners would have never been afforded the opportunity to amass the $91,162 of appreciation attributable to that portion of the stock. Granting their argument, petitioners have been treated to an undeniable accession to wealth which would not have occurred had they satisfied their liability timely. See Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955).

In accordance with the preceding section, petitioners will be allowed to claim basis in the note of $126,240 for tax year 2007 for amounts that will be paid in satisfaction of the Court's determination with respect to tax year 2003. With respect to the remaining $91,162 petitioners claimed as a capital loss for tax year 2007, respondent's determination is sustained.

All other adjustments reflected on petitioners' 2003 and 2007 statutory notices of deficiency are computational.

To reflect the foregoing,

Decisions will be entered under Rule 155.