# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-60801

United States Court of Appeals
Fifth Circuit

**FILED**

December 9, 2014

Lyle W. Cayce
Clerk

LORI M. MINGO; JOHN M. MINGO,

      Petitioners - Appellants

v.

COMMISSIONER OF INTERNAL REVENUE,

      Respondent - Appellee

Appeal from the Decision of the
United States Tax Court

Before KING, GRAVES, and HIGGINSON, Circuit Judges.

JAMES E. GRAVES, JR., Circuit Judge:

In 2002, Petitioners-Appellants Lori M. Mingo and John M. Mingo, married taxpayers, reported the sale of a partnership interest, including the portion of the proceeds attributable to the partnership's unrealized receivables ("unrealized receivables"), through the installment method of accounting. In an action brought to determine their federal income tax liability, the tax court held that the Mingos were not entitled to utilize the installment method to report the unrealized receivables. The tax court further held that the Commissioner of Internal Revenue ("the Commissioner") appropriately applied § 481(a) of the Internal Revenue Code ("I.R.C.") in 2007 to adjust the Mingos's 2003 joint income tax return to account for the unrealized receivables income

No. 13-60801

that should have been reported in 2002. For the reasons stated herein, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The material facts in this case have been stipulated and are not in dispute. The relevant factual background, as recited by the tax court, is as follows:

> Petitioners are husband and wife and were married for the years at issue. Mrs. Mingo joined PricewaterhouseCoopers, LLP ("PWC") sometime before tax year 2002. Mrs. Mingo was a partner in the management consulting and technology services business ("consulting business") of PWC until tax year 2002, when PWC sold its consulting business to International Business Machines Corporation ("IBM").

> As an initial step in the transaction, PwCC, L.P. ("PwCC"), a partnership, was formed in April or May 2002. PwCC was owned by certain subsidiaries of PWC. As part of the transaction, PWC transferred its consulting business to PwCC. Among the assets PWC transferred to PwCC were its consulting business' uncollected accounts receivable for services it had previously rendered (unrealized receivables). PWC then transferred each of the 417 consulting partners (collectively, consulting partners) an interest in PwCC and cash in exchange for the partner's interest in PWC. Mrs. Mingo was one of these partners, and she received a partnership interest in PwCC and cash from PWC in exchange for her partnership interest in PWC.

> The value of Mrs. Mingo's partnership interest in PWCC as of October 1, 2002, was $832,090, of which $126,240 was attributable to her interest in partnership unrealized receivables. On that date, PWC caused its subsidiaries to sell their respective interests in PwCC to IBM. At the same time, the consulting partners sold their respective interests in PwCC to IBM in exchange for convertible promissory notes. At the end of the transaction, IBM owned 100% of the consulting business.

No. 13-60801

On October 1, 2002, IBM gave Mrs. Mingo a convertible promissory note (note) for $832,090 in exchange for her interest in PwCC. The $126,240 attributable to her interest in partnership unrealized receivables was included in that face value. The note included the following terms:

> (1) Mrs. Mingo had the right to convert all or any portion of the unpaid principal balance into IBM common stock at any time after the first anniversary of closing. However, any such conversion had to be in increments of $1,000 principal amounts or for the entire unpaid principal.

> (2) unless the note is converted into IBM stock, IBM would pay interest on the unpaid principal balance semiannually.

> (3) the outstanding principal amount of the note and any accrued and unpaid interest was due and payable on the fifth anniversary of the transaction's closing (i.e., October 1, 2007).

On their 2002 Federal income tax return and on an attached Form 6252, Installment Sale Income, petitioners reported the sale of Mrs. Mingo's interest in PwCC as an installment sale. The selling price, gross profit, and contract price were listed as $832,090. Petitioners did not recognize any income relating to the note other than interest income on their 2002 Federal income tax return.

Petitioners did not convert any portion of the note during tax years 2002, 2003, 2004, 2005, and 2006. Petitioners also did not report any income other than interest income from the note for any of those years.

During tax year 2007 petitioners converted the entirety of the note in a series of transactions. On February 26, 2007, petitioners converted a portion of the note into shares of IBM stock worth $929,765. Also on February 26, 2007, petitioners sold those shares of IBM stock for a total of $899,287. On

No. 13-60801

> October 1, 2007, petitioners converted the remainder of the note into shares of IBM stock worth $283,494.

*Mingo v. Comm'r*, 105 T.C.M. (CCH) 1857, at *1–2 (2013) (footnote omitted).

On May 23, 2007, the Commissioner issued a notice of deficiency for 2003. The Commissioner contended that the $126,240 Mingo[1] had received in exchange for the partnership's unrealized receivables was not eligible for reporting under the installment method. Accordingly, the Commissioner concluded that Mingo should have reported this amount as ordinary income in 2002 and paid taxes on it then. Although the limitations period for adjusting Mingo's 2002 tax return had expired by May 23, 2007, the Commissioner adjusted Mingo's 2003 tax return to reflect the income that arguably should have been reported in 2002. The Commissioner contended that since Mingo's use of the installment method of accounting did not clearly reflect her income, the Commissioner was entitled to change her accounting method pursuant to I.R.C. § 446. As a result of the change in accounting method, the Commissioner further maintained that he was entitled to make an adjustment to Mingo's taxes for the year 2003 pursuant to I.R.C. § 481(a).

In her 2007 tax return, Mingo reported profit from the conversion of the promissory note as long-term capital gains and paid taxes on it. On July 21, 2010, the Commissioner issued a notice of deficiency for 2007. In this second notice of deficiency the Commissioner argued, in the alternative, that if Mingo's use of the installment method was proper, the $126,240 attributable to unrealized receivables that was reported in 2007 should have been taxed as ordinary income rather than capital gains.

---

[1] Because the dispute in this case concerns only the income of Lori Mingo, we treat her as the sole appellant and refer to her as either "Mrs. Mingo" or by her last name throughout the remainder of this opinion.

4

No. 13-60801

Mingo challenged both of the Commissioner's deficiency determinations before the tax court. The tax court found in favor of the Commissioner's first notice of deficiency in stating that "the gain realized on Mrs. Mingo's partnership interest, to the extent attributable to partnership unrealized receivables, was . . . ineligible for installment method reporting." *Mingo*, 105 T.C.M. 1857, at *5. Accordingly, the tax court concluded that Mingo "should have properly reported an additional $126,240 of ordinary income on [her] 2002 Federal income tax return instead of reporting it under the installment method." *Id.* The tax court further determined that Mingo's "chosen accounting method did not clearly reflect income with respect to the portion of the note attributable to partnership unrealized receivables." *Id.* at *6. Therefore, the tax court held that the Commissioner properly "made a section 481(a) adjustment of $126,240 [to taxable income] for tax year 2003, the year for which [he] initiated the change of accounting method" as "necessary to remedy the omission of ordinary income that occurred in tax year 2002 as a result of petitioners' impermissible election to use the installment method." *Id.* at *7. Mingo now appeals the tax court's ruling.

## STANDARD OF REVIEW

Generally, we review appeals from the tax court under the same standards by which we review district court appeals. *Comm'r v. Brookshire Bros. Holding, Inc.*, 320 F.3d 507, 509 (5th Cir. 2003). Preserved challenges to conclusions of law are reviewed *de novo*; while, preserved challenges to factual issues are reviewed for clear error. *See id.* Because this case was decided on stipulated facts, we review only the contested issues of law.

## DISCUSSION

On appeal, Mingo challenges the Commissioner's determination that the installment sale reporting of the unrealized receivables in 2002 did not clearly reflect her income. Mingo also contests the Commissioner's authority to

change her method of accounting in 2003, given that the allegedly erroneous reporting under the installment method occurred in 2002, the year of the sale.[2]

**Method of Accounting that Clearly Reflects Income**

Section 446(b) provides that if a taxpayer's method of accounting does not clearly reflect her taxable income, the Secretary shall determine the method of accounting that does clearly reflect her taxable income. *Id.* Section 446(b) applies to both the method of accounting for overall taxable income as well as the treatment of any item. Treas. Reg. § 1.446–1(a)(1). In the instant case, the Commissioner determined that pursuant to I.R.C. §§ 741 and 751, the gain from the sale of Mingo's partnership interest that was attributable to unrealized receivables should not have been reported under the installment method.

Section 741 specifically provides that gain from the sale of a partnership interest shall ordinarily be considered gain from the sale or exchange of a capital asset with some exceptions that are outlined in I.R.C. § 751. I.R.C. § 741. Those exceptions include gain from unrealized receivables. *See* I.R.C. §§ 741, 751. Section 751 provides that the gain resulting from the unrealized receivables of the sale of a partnership interest should not be reported as gain from the sale or exchange of a capital asset. Because the sale of Mingo's partnership interest attributable to unrealized receivables could not be reported as gain from a capital asset, it was required to be reported as gain from ordinary income. The purpose of the § 751 exception is to prohibit ordinary income from being transformed into capital gains (which is taxed more favorably) simply by being passed through a partnership and sold. *See,*

---

[2] The parties agree that the Commissioner was unable to change the method of accounting for the 2002 tax year because on May 23, 2007 when the first deficiency notice was issued, the three-year statute of limitations imposed by I.R.C. § 6501 had run for the 2002 tax year.

*e.g.*, *Madorin v. Comm'r*, 84 T.C. 667, 682 (1985); H.R. Rep. No. 83-1337, at 70 (1954), *reprinted in* 1954 U.S.C.C.A.N. 4017, 4097 ("The provisions relating to unrealized receivables or fees . . . are necessary to prevent the use of the partnership as a device for obtaining capital-gain treatment on fees or other rights to income.").

The central dispute raised by Mingo in the instant action is the legal question of whether the installment method can be used to report the portion of the partnership interest attributable to unrealized receivables, given its status as ordinary income. We agree with *Sorensen v. Commissioner*, 22 T.C. 321 (1954) and conclude that the unrealized receivables are not eligible for installment method reporting. In *Sorensen*, the petitioner was granted stock options, which he sold and reported as long-term capital gain using the installment method. *Id.* at 335. In exchange for the sale of the stock options, the petitioner received cash as well as notes. *Id.* at 341–42. The tax court found that the proceeds from the sale of the stock options constituted compensation for services and were therefore ordinary income, not eligible for installment method reporting. *Id.* at 342. The tax court in *Sorensen* explained:

> Since the sales of the options operated to compensate petitioner for his services, what he received in the form of both cash and notes was income by way of compensation. The provisions of section 44[3] relate only to the reporting of income arising from the sale of *property* on the installment basis. Those provisions do not in anywise purport to relate to the reporting of income arising by way of *compensation for services*.

*Id.* (emphasis added).

Likewise, in the case at hand, the proceeds from the unrealized receivables, classified as ordinary income, do not qualify for installment

---

[3] This section was the predecessor to I.R.C. § 453. *Realty Loan Corp v. Comm'r*, 54 T.C. 1083, 1097 (1970).

method reporting because they do not arise from the sale of property. *See id.*; *see also Hyatt v. Comm'r*, 20 T.C.M. (CCH) 1635, (1961), *aff'd*, 325 F.2d 715 (5th Cir. 1963) (finding that an amount which constituted a substitute for compensation was not eligible for installment sale reporting); *Town and Country Food Co. v. Comm'r*, 51 T.C. 1049, 1055 (1969) (holding that the sale of services as opposed to personal property cannot be reported under the installment method). Therefore, the installment method did not adequately reflect the income Mingo received from the unrealized receivables.

**Change of Accounting Method in 2003**

When the Commissioner determines that a different method of accounting should be utilized, the Commissioner may change the method of accounting pursuant to I.R.C. § 446. *Id.* The instant case is complicated by the fact that the Commissioner changed Mingo's method of accounting in 2003 instead of 2002, the tax year in which she commenced her installment method reporting. The Commissioner could not change the method of accounting for tax year 2002 because the limitations period for adjustment of Mingo's tax return for that year had expired by the time of the May 23, 2007 deficiency notice. Without a change in the 2003 method of accounting, the $126,240 that should have been taxed in 2002 would have escaped taxation entirely.

The Commissioner's change of accounting method in 2003 was not arbitrary, particularly in light of the discretion granted to the Commissioner under § 446. The Commissioner "possesses wide discretion to determine whether a particular method of accounting clearly reflects income and to require a change to a method which, in his opinion, does clearly reflect income." *Capitol Fed. Sav. & Loan Ass'n v. Comm'r*, 96 T.C. 204, 209 (1991). "The taxpayer bears a heavy burden of proof to show that the Commissioner abused his discretion, and the Commissioner's determination is not to be set aside

unless shown to be plainly arbitrary." *Id.* at 210 (internal quotation marks and citation omitted).

By initially electing to use the installment method in 2002, Mingo would have had no reason to believe that she had escaped taxation on the $126,240 gained from the unrealized receivables. *See Graff v. Chevrolet Co. v. Campbell*, 343 F.2d 568, 572 (5th Cir. 1965) ("When a taxpayer uses an accounting method which reflects an expense before it is proper to do so or which defers an item of income that should be reported currently, he has not succeeded (and does not purport to have succeeded) in permanently avoiding the reporting of any income; he has impliedly promised to report that income at a later date, when his accounting method, improper though it may be, would require it."). Instead, she had merely deferred taxation on the unrealized receivables until 2007. The Commissioner did not abuse his discretion by forcing Mingo to report the amount as taxable income in 2003 as opposed to 2007 in light of the Commissioner's correct determination that Mingo's use of the installment method was improper.

## Section 481(a)(2) Adjustments Following a Change of Accounting Method

Following a change of accounting method, the Commissioner may make any necessary adjustments to prevent taxable income from being duplicated or omitted as a result of the change under I.R.C. § 481(a)(2). *Id.* Section 481(a)(2) provides the exception that "there shall not be taken into account any adjustment in respect of any taxable year to which this section does not apply unless the adjustment is attributable to a change in the method of accounting initiated by the taxpayer." *Id.* It is clear that the change in the method of accounting for the instant action was initiated by the Commissioner rather than Mingo. Mingo, however, contends that the § 481(a)(2) exception applies

to her because § 481 "does not apply" to erroneous reporting that occurred in the 2002 tax year.

Mingo's contention is founded upon a misunderstanding of the phrase "any taxable year to which this section does not apply." *See id.* As this Circuit has previously explained, "The only limitation on [§ 481(a)] adjustments is that no pre-1954 adjustments shall be made." *Comm'r v. Welch*, 345 F.2d 939, 950 (5th Cir. 1965). Thus, for the purposes of present-day § 481(a) adjustments, once there has been a change in the method of accounting, no statute of limitations applies to the Commissioner's ability to correct errors on old tax returns. *See Rankin v. Comm'r*, 138 F.3d 1286, 1288 (9th Cir. 1998) ("[T]he statute of limitations does not apply to § 481."); *Graff*, 343 F.2d at 571–72 (holding that the Commissioner may include in taxable income, for the year of the accounting method change, those amounts that were omitted in closed years).

In *Graff*, this Circuit explained the absence of a statute of limitations for § 481 adjustments as follows:

> The statute of limitations is directed toward stale claims. Section 481 deals with claims which do not even arise until the year of the accounting change. . . . Section 481, therefore, does not hold the taxpayer to any income which he has any reason to believe he has avoided, and does not frustrate the policy that men should be able, after a certain time, to be confident that past wrongs are set at rest. Section 481 is designed to prevent a distortion of taxable income and a windfall to the taxpayer stemming from a change in accounting at a time when the statute of limitations bars reopening the taxpayer's returns for earlier years. . . . The Commissioner has ample power to change accounting methods and reassess income for open years; section 481 would be virtually useless if it did not affect closed years.

No. 13-60801

343 F.2d at 572.  Thus, the Commissioner properly utilized his authority under § 481(a) in adjusting Mingo's 2003 tax return to account for the omission[4] of $126,240 from taxable income, an amount that was attributable to unrealized receivables from the sale of Mingo's partnership interest in 2002.

## CONCLUSION

In light of the foregoing, we AFFIRM the district court's judgment in favor of the Commissioner.

---

[4] Mingo additionally contends that the Commissioner improperly adjusted her 2003 tax return under I.R.C. § 481(a) because Mingo did not "omit" any amounts in 2002 but instead reported the unrealized receivables under the installment method.  Mingo argues that the definition of "omission" utilized by the Supreme Court in *United States v. Home Concrete & Supply, LLC*, 132 S. Ct. 1836 (2012) in interpreting I.R.C. § 6501(e)(1)(A) applies to § 481(a) also.  In *Home Concrete*, the Supreme Court defined "omit" as leaving out "specific receipts or accruals of income" from "the computation of gross income."  132 S. Ct. at 1840. The purpose of the § 6501(e)(1)(A) extended statute of limitations is to give the Commissioner additional time to investigate returns in situations where "the Commissioner is at a special disadvantage . . . [because] the return on its face provides no clue to the existence of the omitted item."  *Id.* (quoting *Colony, Inc. v. Comm'r*, 357 U.S. 28, 36 (1958)).  We conclude that the interpretation of the term "omit" in § 6501(e)(1)(A) does not control the interpretation of the term "omitted" in § 481(a).  The purpose of a § 481(a) adjustment is to prevent income from being double-taxed, or not taxed at all, due to a change in accounting method.  Therefore, while § 6501(e)(1)(A) extends the statute of limitations due to an omission from the overall reporting of gross income, § 481(a) discards the statute of limitations for an entirely different reason.  We disagree with Mingo's contention that "omit" for purposes of § 481(a) references the amounts that were reported.  Instead, the term as used in § 481(a) references the amounts that have not been properly taxed as a consequence of a change in the method of accounting.